UNITED STATES, Appellee,

v.

Sergeant Dominic QUINTERO, United States Army, Appellant.

ARMY 9801533.

U.S. Army Court of Criminal Appeals.

25 Oct. 2000.

For Appellant: Colonel Adele H. Odegard, JA; Major Scott R. Morris, JA; Major Kirsten C. Brunson, JA; Captain Jimmonique R. Simpson, JA (on brief).

For Appellee: Colonel Russell S. Estey, JA; Major Patricia A. Ham, JA; Captain Paul T. Cygnarowicz, JA (on brief).

Before TOOMEY, Senior Judge, CARTER, and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of absence without leave (five specifications), failure to go to his appointed place of duty (four specifications), willful disobedience of a noncommissioned officer's order, wrongful use of marijuana, wrongful use of cocaine (two specifications), and making and uttering a check without sufficient funds (two specifications), in violation of Articles 86, 91, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 912a, and 934 [hereinafter UCMJ]. The approved sentence was a bad-conduct discharge, confinement for seventy-five days, and reduction to Private E1. Appellant was awarded thirty-seven days of pretrial confinement credit against the sentence to confinement.

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellant raises two assignments of error. We agree with appellant's assertion that the military judge improperly reconsidered appellant's adjudged sentence, but find no error in the military judge's ruling that appellant was not subjected to unlawful pretrial punishment when he was required to perform cleaning duties with other pretrial confinement prisoners who were junior in rank to him.

## Announcement of Sentence

### Facts

The military judge originally announced, "This court adjudges the following [sentence]: To be discharged from the service with a Bad-Conduct Discharge; and [t]o be confined for 75 days. **No forfeitures or reduction.** You may be seated." (Emphasis added). After discussing the quantum portion of the pretrial agreement and appellant's post-trial and appellate rights, the military judge adjourned appellant's court-martial.

Two minutes after adjournment, the military judge called the court to order and the following exchange occurred:

MJ: Sergeant Quintero, Captain Arias, Captain Flippin, when I announced my sentence just a few minutes ago, I announced *an inconsistent sentence.* I'd like to go back on the record to correct that.

I originally announced that the defendant would be sentenced to a Bad-Conduct Discharge, 75 days confinement, no forfeitures and no reduction. By operation of Article 58, [UCMJ,] 10 U.S.C. § 858, when the defendant is sentenced to a Bad-Conduct Discharge and/or confinement, there is an automatic reduction to the grade of E1. So my sentence will be as follows:

> To be discharged with a Bad-Conduct Discharge;
> 75 days confinement; and
> Reduction to the grade of E1.

> No forfeitures.

The accused will be credited with 37 days confinement against the sentence to confinement.

Does counsel for the government understand my correction of the sentence?

TC: Yes, Your Honor.

MJ: More importantly, does the defendant and defense counsel understand my correction of the sentence?

ACC: Yes, sir.

MJ: Captain Flippin?

DC: Yes, Your Honor.

MJ: Are there any questions or further comments to take up? [Negative response from all parties.]

If not, then I stand corrected as I earlier spoke. My sentence is now corrected, and is now the sentence of the court, and we are again adjourned.

In her Rule for Courts-Martial [R.C.M.] 1105 submission to the convening authority on appellant's behalf, trial defense counsel asserted that the military judge committed legal error by reconsidering appellant's sentence in violation of R.C.M. 1009. Appellant's R.C.M. 1105 submission asserted what happened during the two-minute break be-

tween adjournment and the reopening of the court-martial.

After adjournment, LTC Richard Hough, the active duty military judge who was observing LTC Flaigle, immediately gathered LTC Flaigle and government and defense counsel, and informed LTC Flaigle that he had announced an inconsistent sentence because, pursuant to Article 58, [UCMJ,] as a result of receiving both confinement and a bad-conduct discharge the accused would be automatically reduced by operation of law.[1] LTC Hough suggested to LTC Flaigle that he should **reconsider his sentence** and either impose a reduction or reconsider the bad-conduct discharge. Within a couple of minutes, LTC Flaigle went back on the record, and this time LTC Flaigle noted on the record that by operation of Article 58, [UCMJ,] there is an automatic reduction to E1. ROT, p. 151. LTC Flaigle then pronounced sentence a second time. . . .

The military judge's second pronouncement of sentence constituted an improper reconsideration of sentence under R.C.M. 1009. Specifically, R.C.M. 1009(c)(1) allows a military judge to call a session for clarification when a sentence is "ambiguous". In this case, however, the original sentence of the military judge was not ambiguous. The original sentence was properly announced under R.C.M. 1007. There was absolutely nothing ambiguous about the original sentence of 75 days confinement and a bad-conduct discharge. That sentence is straightforward and readily understandable.

(Emphasis added).

In his addendum to his recommendation under R.C.M. 1106, the staff judge advocate stated that he had "examined the pertinent case law and regulations in connection with the defense's assertion and f[ound] that [the] sentence was appropriately announced."

In its appellate brief, the government argues that the "military judge corrected an oversight in the sentence which he originally announced. His correction in the sentence was consistent with his authority as the sentencing authority and did not constitute a reconsideration of the sentence."

### Discussion

Appellant argues that the military judge improperly reconsidered an unambiguous sentence under R.C.M. 1009, while the government asserts the military judge merely corrected an erroneous announcement of sentence under R.C.M. 1007. R.C.M. 1007(b) provides:

(b) *Erroneous announcement.* If the announced sentence is not the one actually determined by the court-martial, the error may be corrected by a new announcement made before the record of trial is authenticated and forwarded to the convening authority. This action shall not constitute reconsideration of the sentence. If the court-martial has been adjourned before the error is discovered, the military judge may call the court-martial into session to correct the announcement.

R.C.M. 1009(c)(1), upon which appellant relies, states:

(c) *Clarification of sentence.* A sentence may be clarified at any time prior to action of the convening authority on the case.

(1) *Sentence adjudged by the military judge.* When a sentence adjudged by the military judge is ambiguous, the military judge shall call a session for clarification as soon as practical after the ambiguity is discovered.

It does not matter whether this case is styled as an erroneous announcement of an adjudged sentence under R.C.M. 1007(b) or a clarification of an ambiguous sentence under R.C.M. 1009(c)(1), because R.C.M. 1102(c)(3) prohibits the use of a post-trial Article 39(a), UCMJ, session or a proceeding in revision to increase the severity of a sentence, unless it is a mandatory sentence.

---

1. Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, p. 93 (30 Sept. 1996) (providing the Army-specific instruction on the effect of Article 58a, UCMJ) makes it clear that reduction is a separate component of a sentence, which may or may not be adjudged, as appropri-ate. Accordingly, it is neither unlawful nor inconsistent to omit a reduction in grade from a sentence that includes a punitive discharge, confinement, or hard labor without confinement, notwithstanding the subsequent reduction by operation of law under Article 58a, UCMJ.

*See also* UCMJ art. 60(e)(2)(c), 10 U.S.C. § 860(e)(2)(c). Therefore, both R.C.M. 1007(b) and 1009(c)(1) are invalid insofar as they purport to authorize an *increase* in an announced sentence *after adjournment,* unless the increased punishment is a mandatory sentence. *See United States v. Jones,* 34 M.J. 270, 271–72 (C.M.A.1992); *United States v. Baker,* 32 M.J. 290, 292–93 (C.M.A. 1991); *United States v. Dodd,* 46 M.J. 864, 865–66 (Army Ct.Crim.App.1997).

■ The holdings in *Jones, Baker,* and *Dodd* create the possibility that an accused may receive a sentence less severe than that intended by the sentencing authority.[2] To avoid such an unintended windfall, trial counsel and military judges must listen carefully to announced sentences and raise any possible concerns about the correctness of an announced sentence prior to adjournment of the court-martial. In a trial with members, trial counsel may ask to examine the sentence worksheet after the sentence is announced. Concerns about possible inconsistencies between announced sentences and punishments required by operation of law (as occurred in this case) must also be resolved prior to adjournment, or the government forever forfeits the opportunity to correct an erroneously announced sentence which is less severe than the actual sentence, unless the increased punishment is mandatory. Congress established this bright-line rule to guarantee the absolute integrity of sentencing proceedings and to eliminate not only any possibility of abuse, but also to avoid even the appearance of command influence in any upward "correction" of an announced sentence after adjournment. *See Jones,* 34 M.J. at 271; *Baker,* 32 M.J. at 293.

■ In appellant's case, the sentence announced after adjournment did increase appellant's adjudged sentence. Under the original sentence, appellant's reduction to pay grade E1 would have been effective on 19 February 1999, when the convening authority took action on appellant's court-martial. UCMJ art. 58a, 10 U.S.C. § 858a. Under the modified sentence, the reduction was ef-

fective fourteen days after 21 October 1998, the date appellant's trial concluded. UCMJ art. 57(a)(1)(A), 10 U.S.C. § 857(a)(1)(A). The reduction to pay grade E1 was not a mandatory punishment for appellant's offenses. Accordingly, we will resurrect the original sentence in our decretal paragraph.

### Illegal Pretrial Punishment

#### Facts

Most of the essential facts regarding this issue are not in dispute. Appellant spent thirty-seven days in pretrial confinement at the Fort Sill Regional Confinement Facility. He was not commingled in any manner with post-trial prisoners. He was billeted in his own cell, one of three cells for pretrial confinement of noncommissioned officers. One week after entering pretrial confinement, appellant began performing work details with other pretrial prisoners, five evenings per week, normally from 2200 hours until 0200 hours (post-trial prisoners performed details during the day). Appellant was the only noncommissioned officer on these pretrial prisoner work details. The work details (generally composed of three to four pretrial prisoners) emptied the trash and stripped, mopped, and buffed floors in hallways and common areas of the building where the pretrial prisoners were confined. Each pretrial prisoner also cleaned his own cell. Appellant never signed a written consent to work with junior enlisted soldiers.

Appellant testified that there was a sergeant major in pretrial confinement who was not allowed to work even though he volunteered to do so. No further information was developed regarding this sergeant major, *i.e.,* whether he had a medical profile or was a high escape risk, or whether his work privileges had been revoked as punishment for a disciplinary infraction.

#### Discussion

Article 13, UCMJ, 10 U.S.C. § 813, provides, in pertinent part, that no person in pretrial confinement "may be subjected to punishment or penalty," nor may the pretrial

---

2. R.C.M. 1007 and 1009 still provide legal authority to correct an erroneous announcement of a sentence or to clarify an ambiguous sentence

when the result is a *decrease* in the adjudged punishment. *See Baker,* 32 M.J. at 292–93.

confinement "be any more rigorous than the circumstances required to insure" the prisoner's presence for trial. The President has expanded the rules against pretrial punishment to prohibit requiring pretrial prisoners "to undergo punitive duty hours or training, perform punitive labor, or wear special uniforms prescribed only for post-trial prisoners." R.C.M. 304(f).

The essence of appellant's argument, at trial and on appeal, is that the military judge erred by not awarding him credit for illegal pretrial punishment because appellant was required to work on details with other pretrial prisoners of lower ranks without having affirmatively consented to do so. Appellant relies on the holding of this court in *United States v. Herrin*, 32 M.J. 983 (A.C.M.R.1991), and paragraph 11–1b(2) of Army Regulation 190–47.[3]

The military judge ruled that the *Herrin* opinion relied on the 1978 version of Army Regulation 190–47 and was not binding on his interpretation of the significantly changed 1996 version of Army Regulation 190–47. The military judge concluded that under the current version of Army Regulation 190–47, appellant was not entitled to the special privileges associated with his rank.

In *Herrin*, the then-existing regulatory provisions on "prisoner training, education, and employment" stated that pretrial prisoners would not be commingled with post-trial prisoners on work details, and that a pretrial noncommissioned officer prisoner would be employed in duties normally performed by a noncommissioned officer, unless the prisoner waived such right in writing. *See Herrin*, 32 M.J. at 985–86; AR 190–47, para. 6–6a(2) and (3)(1 Oct. 1978)(C1, 1 Nov. 1980). Sergeant Herrin, a pretrial prisoner, was forced to work on details with junior enlisted *post-trial* prisoners. Under those facts, this court held that

there was a violation of Article 13, Uniform Code of Military Justice in that the appellant was denied the protections afforded him by AR 190–47, was required to work in immediate association with lower ranking **convicted** prisoners, and was required

to perform work inconsistent with his rank and status as a noncommissioned officer. *Herrin*, 32 M.J. at 986 (emphasis added).

In 1996, the Secretary of the Army issued a complete revision of Army Regulation 190–47, pursuant to his authority to prescribe regulations governing the "facilities and treatment" of prisoners. *See* R.C.M. 304(f). "Prisoner employment, training, and education" is now contained in paragraph 5–5 of Army Regulation 190–47. The new regulation deletes the provision, relied on by the *Herrin* court, restricting pretrial prisoners who are noncommissioned officers to the performance of duties normally performed by noncommissioned officers of the same rank.

Key provisions on prisoner employment under the new regulation include: (1) prisoners, consistent with their custody grade, are required to perform a full day of useful work, to the same extent as soldiers available for general troop duty, in a forty-hour work week; (2) prisoners may be employed on any work assignment consistent with the intent and purposes of the regulation; (3) pretrial prisoners will not be assigned work details with post-trial prisoners; and (4) prisoners will not be placed in any position where discharge of duties may reasonably involve the exercise of authority over other prisoners. AR 190–47, para. 5–5a(1), (7), (8) and (10).

Paragraph 10–1(b) of Army Regulation 190–47 contains specific guidance concerning admission procedures:

b. Pretrial prisoners and officer prisoners will be carefully oriented as to their status, rights, and privileges, including the following factors:

(1) They will be required to participate in those phases of the correction orientation or treatment program determined by the facility commander to be necessary to assure their control, custody, employment, training, health, and welfare.

(2) Incarcerated officer and noncommissioned officer prisoners will not exercise command or supervisory authority over other persons while confined. They will comply with the rules and regulations of

3. Army Reg. 190–47, The Army Corrections System (15 Aug. 1996) [hereinafter AR 190–47].

the ACS [Army Corrections System] facilities to the same extent as other prisoners. They will not be permitted those special privileges normally associated with those of equal rank.

Appellant relies on paragraph 11–1 of Army Regulation 190–47, which outlines custody grades (trustees, minimum, medium, or maximum security classifications) and procedures. Paragraph 11–1b provides:

b. Custodial segregation.

(1) Pretrial prisoners will be segregated from other prisoners in employment and recreation areas. Pretrial prisoners will billet separately from post-trial prisoners to the greatest extent possible.

(2) **A noncommissioned officer in a pretrial status will be segregated from other pretrial prisoners unless he or she voluntarily waives, in writing, the right to be segregated** and the waiver is approved by the facility commander.

(Emphasis added.) A similar provision existed in paragraph 7–1b(2) of the previous version of Army Regulation 190–47.

■ Appellant argues that *Herrin* and the provision emphasized above require the written consent of a pretrial noncommissioned officer prior to his participation on work details with junior enlisted pretrial prisoners. Considering the regulation as a whole, particularly the prisoner employment provisions discussed above, we disagree. Absent indisputably clear language to the contrary, we will not interpret Army Regulation 190–47 in a manner that lets a prisoner "dictate the terms and conditions of his confinement." *See United States v. Palmiter*, 20 M.J. 90, 96 (C.M.A.1985). A pretrial prisoner may be required to perform useful labor because he remains on active duty as a full-time soldier. *See Palmiter*, 20 M.J. at 94.

■ Considering the totality of the circumstances, we find no merit to appellant's claim that he suffered unlawful pretrial punishment by being forced to work with other pretrial prisoners who were junior in rank to him. Exercising our fact-finding power under Article 66(c), UCMJ, we find that: (1)

appellant's assignment to work details was consistent with the prison's operational and security requirements; (2) appellant's work assignments were not intended to punish or humiliate him, nor were his working conditions different from other pretrial prisoners; (3) the conditions of appellant's pretrial confinement served legitimate nonpunitive governmental objectives as embodied in Army Regulation 190–47 (*see generally United States v. Smith*, 53 M.J. 168, 170–72 (2000); *United States v. Starr*, 53 M.J. 380, 382 (2000)); and (4) appellant's pretrial confinement conditions constituted a reasonable accommodation between appellant's dual status as a noncommissioned officer and as a soldier who had to be confined and guarded to ensure his presence for court-martial.

■ We hold that Army Regulation 190–47, as currently written, does not grant a noncommissioned officer placed in pretrial confinement the right to refuse to work with other pretrial prisoners solely because they are junior in rank to him. To the extent that our previous opinion in *United States v. Herrin*, 32 M.J. 983, relied upon provisions of Army Regulation 190–47 that subsequently have been superceded, it should no longer be followed.

### Decision

The findings of guilty are affirmed. The court affirms only so much of the sentence as provides for a bad-conduct discharge and confinement for seventy-five days. Appellant will be credited with thirty-seven days pretrial confinement against the sentence to confinement.

Senior Judge TOOMEY and Judge NOVAK concur.