UNITED STATES

v.

**First Lieutenant Heidi F. ADCOCK, United States Air Force.**

**ACM 36018.**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 24 June 2004.

27 April 2006.

Appellate Counsel for Appellant: Colonel Carlos L. McDade, Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, Major Sandra K. Whittington, Major L. Martin Powell, Major David P. Bennett, and Captain Anthony D. Ortiz.

Appellate Counsel for the United States: Lieutenant Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and Clayton O'Connor (legal intern).

En Banc BROWN, STONE, ORR, MOODY, JOHNSON, SMITH, FINCHER, MATHEWS, and JACOBSON, Appellate Military Judges.

## OPINION OF THE COURT

STONE, Senior Judge:

The appellant pled guilty to violating her commander's order to stay within the limits of Travis Air Force Base (AFB), California, wrongful use of cocaine and methamphetamine, and larceny. These offenses violated Articles 92, 112a, and 121, UCMJ, 10 U.S.C. §§ 892, 912a, 921. After accepting her pleas, the military judge, sitting alone as a general court-martial, sentenced her to a dismissal and confinement for 15 months. The convening authority approved the findings and sentence as adjudged.

On 11 May 2005, the appellant submitted her case to this Court for review without assigning any errors for our consideration. On 22 June 2005, upon review of the record of trial, a panel of the Court specified the following issue for review:

WHETHER, HAVING FOUND THAT THE TERMS OF THE APPELLANT'S PRETRIAL CONFINEMENT VIOLATED AIR FORCE INSTRUCTION (AFI) 31–205, *THE AIR FORCE CORRECTIONS SYSTEM*, ¶¶ 5.8.1.2 AND 7.1.1 (7 Apr 2004), THE MILITARY JUDGE ERRED IN NOT DETERMINING WHETHER THE VIOLATION "INVOLVE[D] AN ABUSE OF DISCRETION" PERMITTING CREDIT UNDER [RULE FOR COURTS–MARTIAL] 305(k).[1]

Upon receiving briefs from both sides, this Court, on its own motion, agreed on 7 November 2005 to hear the case en banc. For the reasons that follow, we hold that the military judge did not err and the appellant is not entitled to additional pretrial confinement credit.

## Background

The appellant arrived at her first duty assignment at Travis AFB, California, in March 2003, and soon encountered work and disciplinary problems. Her conduct led to formal counseling and other adverse administrative actions. In August 2003, because of her erratic behavior at work, her commander asked whether she would consent to drug urinalysis testing, and she agreed. This test detected one of the metabolites of cocaine at a level that far exceeded the cutoff of 100 ng/mL established by the Department of Defense (DoD) for reporting a urine sample as positive for cocaine use.

On 3 January 2004, the appellant's commander restricted her to the limits of Travis AFB. Soon thereafter, she stole wallets from the purses of two of her co-workers. She told the military judge she took the wallets to obtain money to satisfy her drug addiction. Her situation continued to deteriorate, and on 8 January 2004, her group commander obtained search authorization to test samples of her hair. She also consented to urinalysis testing on the same day. Both tests established her continued use of cocaine, and the urinalysis test also established her use of methamphetamine. On 16 January 2004, the appellant consented to another urinalysis. The results established the presence of cocaine.

On 19 January 2004, she broke restriction. The appellant's commander learned of this misconduct based upon her arrest by civilian authorities for possession of drug parapher-

---

1. In specifying this Issue, we also asked the parties to specifically address the following four areas of interest to the Court:
   1. Whether the appellant has an enforceable right to compliance with the terms of AFI 31–205, in light of *Kreutzer v. United States,* 60 M.J. 453 (C.A.A.F.2005) (mem.).
   2. Whether a violation of R.C.M. 304(f), *Punishment prohibited,* constitutes "punishment" within the meaning of Article 13, UCMJ, 10 U.S.C. § 813.
   3. Whether the government is relieved of any obligation to comply with the terms of AFI 31–

205, R.C.M. 304, or R.C.M. 305 by virtue of entering into a memorandum of agreement with local civilian authorities to use civilian confinement facilities to house military prisoners.
   4. Whether the terms of R.C.M. 305(k) permitting discretionary sentence credit for pretrial confinement that "*involves* an abuse of discretion" are broader than the provisions of R.C.M. 305(j) that mandate sentence credit for pretrial confinement that occurs "*as a result of* an abuse of discretion" (emphasis added).

nalia. She was ordered into pretrial confinement on that same date.

Because Travis AFB did not have its own facility, the appellant was sent to the Solano County Jail, a civilian confinement facility near Travis AFB. She was later transferred to Claybank Detention Facility, also in Solano County. According to a Memorandum of Agreement signed by Travis AFB and the Solano County Sheriff's Office, both facilities were required to be approved by the United States Marshal Service or have accreditation by the American Correctional Association, American Jail Association, or the state of California.

At trial, the conditions of her confinement were not subject to dispute, but the specific facts were not extensively developed on the record. At the Solano County Jail, the appellant was placed in a two-person cell where she ate, slept, and used the bathroom. She stayed in her cell between 22 and 23 hours a day, depending upon her security classification. During most of her stay at the Solano County Jail, she shared a cell with women who had been convicted of such things as theft, burglary, and aggravated assault. At the Claybank Detention Facility, she shared sleeping and living quarters in an open bay room with 19 other inmates—many of whom had been convicted. At both facilities, she wore the same jumpsuit as all other inmates, to include convicted prisoners. The color of her jumpsuit depended upon her security classification, rather than her designation as a pretrial detainee. She performed tasks to keep her module clean, but otherwise was not required to perform work duties unless she volunteered.

She ultimately served 157 days in pretrial confinement and received 157 days of administrative credit against her adjudged confinement. *See United States v. Allen,* 17 M.J. 126 (C.M.A.1984).

2. AFJI 31–215, *Military Sentences to Confinement,* was last published in November 1964. It established procedures for computing the sentences of Army and Air Force personnel, but did not address housing conditions for confinees. It was later revised and redesignated as Air Force Regulation 125–30, *Military Sentences to Confinement* (28 Feb 1989). Paragraph 4(g) of the latest

### Motion at Trial

The appellant did not complain about the Solano County confinement facilities prior to trial. Nonetheless, at trial she asked the military judge to award an additional 157 days of confinement credit because she was improperly commingled with and required to wear the same prison uniform as convicted inmates. Her counsel argued—and the military judge found—these conditions violated AFI 31–205, ¶¶ 5.8.1.2 and 7.1.1. These provisions state:

> 5.8.1.2. All [pretrial] detainees will be housed in separate cells or sleeping areas, separated by sight, from post-trial inmates. They may share the same common areas at the same time. [Pretrial] detainees are housed IAW [in accordance with] Article 13, UCMJ, [10 U.S.C. § 813,] and AFJI [Air Force Joint Instruction] 31–215, paragraph 4(g).[2]
>
> . . . .
>
> 7.1.1. [Pretrial] detainees. Military members in [pretrial] status are not convicted of a crime and will continue to wear the [battle dress uniform] with authorized rank insignia, badges, patches, devices, etc. . . . [Pretrial] detainees will not be placed in the same color distinctive uniform worn by adjudged and sentenced inmates IAW [R.C.M.] 304(f).

These regulatory provisions are made applicable to correctional facilities outside of the DoD by virtue of AFI 31–205, ¶ 1.2.2.2.2, which requires civilian facilities to "meet or exceed" the standards of confinement and treatment that would be provided by a DoD facility.

Trial defense counsel argued that compliance with the "compassionate" provisions found in AFI 31–205, ¶¶ 5.8.1.2. and 7.1.1, was nondiscretionary based upon language on the title page which states, "**COMPLIANCE WITH THIS PUBLICATION IS MANDATORY.**"[3] He further argued it

regulation only addresses the calculation of the release date of prisoners. We find this reference has no bearing on the matters before this Court.

3. This language is not unique to the confinement instruction. According to AFI 33–360VI, *Air Force Content Management Program—Publication,* ¶ 2.2.4 (30 Jan 04), *all* Air Force instruc-

granted a "benefit on people placed in pretrial confinement." Consequently, he argued, the government's disregard of the instruction permitted the military judge to infer that punishment or an intent to punish had occurred, in violation of the prohibition of Article 13, UCMJ, against the imposition of pretrial punishment. *See generally United States v. Palmiter*, 20 M.J. 90 (C.M.A.1985). Alternatively, trial defense counsel asked the military judge to use his "equitable powers to grant some relief." [4]

After hearing evidence, the military judge entered the following findings of fact, which were not disputed:

> The Solano County jail makes no effort to segregate prisoners according to whether or not they are in pretrial confinement or have been convicted. The jail segregates only by relative security level. For example—medium versus maximum and according to whether or not the inmate has received a sentence or not. In the jail, confinees who have received a sentence are generally not allowed to mix with those who have not. However, in Solano County defendants are not sentenced at the time of conviction. After conviction, they are returned to the general population of the jail where they remain until sentenced. This lag time between conviction and sentencing can last anywhere to a few days to over a month. As a result, pretrial confinees and convicts are routinely incarcerated with one another in the same modules in the same cells.

> According to [the senior corrections officer at the Solano County Jail], while the Solano County Jail tried to prevent military pretrial confinees from being housed with convicts, the jail cannot always do so. This is especially true when the jail is experienc[ing] overcrowding. Moreover as the jail does not track prisoners according to the prisoners['] pretrial versus convic-

tion status, the jail has no way of knowing if a military pretrial confinee has been housed with convicts.

As to the Claybank Detention Facility, the military judge found that pretrial detainees were also routinely housed with convicts and that the appellant's uniform was the same as other prisoners, without regard to her pretrial status.

The military judge determined the two regulatory provisions had been violated. Nonetheless, he ruled the appellant was not entitled to relief because "[n]oncompliance with Air Force regulations governing pretrial confinement may be evidence supporting a claim of punishment but is not in and of itself determinative of the issue." He further noted:

> [T]he court does not necessarily view this [lack of compliance with Air Force regulations] as a major concern. Many bases throughout the Air Force no longer have confinement facilities. If members of the Air Force are housed in a local facility for pretrial confinement, it would see[m] logical that Air Force members would have to abide by that [facility's] rules and regulations.... While the court is aware that local facilities will never meet the requirements of AFI 31–205 [relating to commingling and prison uniforms], the court does have evidence that the treatment of inmates at each facility where the accused has been housed was in no way cruel or inhumane.

He concluded there was no intent to punish the appellant and that there was a "legitimate nonpunitive governmental objective" for her pretrial confinement, and ultimately determined the appellant was not entitled to additional administrative credit against her sentence.

### Discussion

#### a. Introduction

We review a military judge's findings of fact under a clearly erroneous standard.

---

tions must contain this banner statement across the top of the title page because the instructions are considered orders of the Secretary of the Air Force.

**4.** Trial defense counsel also advised the military judge of *United States v. Fletcher,* another case

involving an accused confined in Solano County facilities under similar circumstances. The Air Force military judge in that case awarded credit on an equitable basis, after finding no violation of Article 13, UCMJ.

*United States v. King,* 61 M.J. 225, 227 (C.A.A.F.2005). The application of those facts to any determination of whether the appellant is entitled to credit for unlawful pretrial confinement or punishment is reviewed de novo. *Id.* The burden is on an accused to establish his or her entitlement to additional sentence credit. *Id.* (citing R.C.M. 905(c)(2)). *Accord United States v. Fischer,* 61 M.J. 415, 418 (C.A.A.F.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1345, 164 L.Ed.2d 58 (2006); *United States v. Mosby,* 56 M.J. 309, 310 (C.A.A.F.2002).

We begin our analysis by noting that an accused servicemember's entitlement to credit against a court-martial sentence can be traced to a variety of sources, to include: the Due Process Clause of the United States Constitution,[5] statute,[6] military common law,[7] and executive orders.[8] In this case, we first address whether a service regulation issued pursuant to Secretarial orders creates an independent source of confinement credit. We then address how a violation of a Secretarial order affects an accused's entitlement to credit from these other sources.

### b. *Secretarial Intent—Violations of Air Force Instructions*

■ We focus first on whether the appellant is entitled to additional credit against her sentence based on a violation of service regulations governing pretrial confinement, even in the absence of an intent to punish, an abuse of discretion, or unusually harsh or rigorous conditions. In other words, we address the novel question of whether AFI 31–205 gives rise to an independent basis for granting pretrial confinement credit. We conclude that it does not.

Our concern about whether the appellant is entitled to additional credit for a violation of the Air Force's confinement regulation

stems, in part, from our superior court's recent decision in *Kreutzer,* 60 M.J. at 453. Prior to the Court of Appeals for the Armed Forces (CAAF) taking action in the case, the Army Court of Criminal Appeals had set aside Sergeant Kreutzer's death sentence. *United States v. Kreutzer,* 59 M.J. 773 (Army Ct.Crim.App.2004), *aff'd,* 61 M.J. 293 (C.A.A.F.2005). Even though his death sentence had been set aside, he remained on death row at the United States Disciplinary Barracks. *Kreutzer,* 60 M.J. at 453. He subsequently filed a petition in the nature of a writ of mandamus with the CAAF under the All Writs Act. 28 U.S.C. § 1651(a). Our superior court granted the relief he requested by ordering his removal from death row. *Kreutzer,* 60 M.J. at 453. In doing so, the court noted the existence of "Army regulations [that] prohibit the commingling of prisoners under sentence of death with other than death sentence prisoners," but otherwise provided no other authority, rationale, or analysis for its decision. *Id.* (quoting Army Regulation (AR) 190–47, *The Army Corrections System,* ¶ 12–6b (5 Apr 2004)).

Given the brevity of the majority opinion, its precedential value is limited, probably intentionally so. Moreover, because a court may exercise broad discretion in deciding whether to grant a writ of mandamus, we are reluctant to give the decision an expansive interpretation. *See id.* at 455 (Crawford, J., dissenting) (suggesting that the majority rested its decision on equitable grounds).

In any event, the majority's ultimate holding in this abbreviated opinion orders specific relief from the conditions of the petitioner's confinement. It does not address in any form or fashion whether the petitioner was entitled to additional confinement credit because of a violation of the Army regulation

---

**5.** *See Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *United States v. McCarthy,* 47 M.J. 162, 164–65 (C.A.A.F.1997).

**6.** Article 13, UCMJ.

**7.** *See United States v. Pierce,* 27 M.J. 367 (C.M.A. 1989) (establishing procedure for providing credit to a servicemember who is court-martialed for an offense that was subject to prior nonjudicial punishment); *United States v. Mason,* 19 M.J.

274 (C.M.A.1985) (awarding credit for pretrial restraint equivalent to confinement); *Allen,* 17 M.J. at 126 (awarding credit for pretrial confinement); *United States v. Suzuki,* 14 M.J. 491 (C.M.A.1983) (recognizing that a military judge has broad discretion to award credit for illegal pretrial confinement involving unusually harsh circumstances).

**8.** *See* R.C.M. 304(f) and 305.

prohibiting commingling of prisoners on death row. Under these circumstances, we are not convinced our superior court intended to establish a per se right to additional pretrial confinement credit whenever military officials fail to adhere to service regulations governing military confinees.

Indeed, when called upon to address the issue, our superior court has consistently held that the failure to adhere to service regulations does not establish a per se entitlement to additional confinement credit. *King*, 61 M.J. at 228; *McCarthy*, 47 M.J. at 166; *United States v. Moore*, 32 M.J. 56, 60 (C.M.A.1991). *See also United States v. Daniels*, 23 M.J. 867, 869 (A.C.M.R.1987) (the question of whether an accused is entitled to additional pretrial confinement credit is not whether the civilian confinement facility adhered to confinement regulations, but whether the conditions of the accused's confinement were considered a violation of Article 13).

Moreover, after a thorough review of AFI 31–201, we can discern no intent on the part of the Secretary to create an enforceable right to additional administrative credit for pretrial confinement credit beyond those rights found in the Constitution, Article 13, or the Rules for Courts–Martial. Absent an unambiguous grant of a substantive right, we hold the military judge did not err in failing to grant additional confinement credit based solely upon a violation of the Air Force's confinement regulation.[9]

#### c. *Presidential Intent—R.C.M. 304(f)*

■ Having concluded AFI 31–205 on its face fails to evince any Secretarial intent to create an entitlement to pretrial confinement credit for a violation of its provisions, we next consider Presidential intent in enacting R.C.M. 304(f), which states in full:

> *Punishment prohibited.* Pretrial restraint is not punishment and shall not be used as such. No person who is restrained pending trial may be subjected to punishment or penalty for the offense which is the basis for that restraint. Pris-

oners being held for trial shall not be required to undergo punitive duty hours or training, perform punitive labor, or wear special uniforms prescribed only for post-trial prisoners. This rule does not prohibit minor punishment during pretrial confinement for infractions of the rules of the place of confinement. *Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned.*

(Emphasis added to last sentence.) Setting aside, for the moment, the question of whether the present case involves punishment, we focus on the last sentence of this provision and address yet another novel question: Whether the President intended to define punishment to include situations when confinement officials fail to afford "facilities and treatment under regulations of the Secretary concerned."

Interpreting the provisions of the *Manual* is a matter of law we review de novo. *United States v. Rendon*, 58 M.J. 221, 224 (C.A.A.F.2003). To ascertain the President's intent in enacting R.C.M. 304(f), we look to the plain language of the rule and any related rule, in light of their object and policy. *Id.* If the *Manual* is unclear on its face, we next look to the Drafters' Analysis of the rule. *Id. Cf. United States v. Rexroat*, 38 M.J. 292, 298 (C.M.A.1993) ("the Drafters' Analysis is a reflection of the drafters' intent, not necessarily the President's").

Because R.C.M. 304(f) is entitled, "*Punishment prohibited*," and because its provisions closely follow the language found in Article 13, there is little doubt the rule is simply the President's implementation of Article 13 and the case law interpreting it. *See generally McCarthy*, 47 M.J. at 165. *See also United States v. Starr*, 51 M.J. 528, 533 (A.F.Ct. Crim.App.1999) (in enacting R.C.M. 304(f) "the President was not trying to expand the law to provide greater rights for individual servicemembers than is set forth in Article 13"), *aff'd*, 53 M.J. 380 (C.A.A.F.2000). Even if R.C.M. 304(f) was unclear, the Drafter's Analysis is not. The Drafters' Analysis ex-

---

9. *Cf. Allen*, 17 M.J. at 126 (holding that a DoD Instruction required day-for-day credit for con-

finement for time spent in pretrial confinement).

plicitly states, "[t]his section is based on Article 13." *Manual for Courts–Martial, United States (MCM)*, A21–16 (2005 ed.).[10]

Moreover, the historical antecedents to R.C.M. 304(f) provide some insight into the meaning and effect of that language of the Rule requiring prisoners to be afforded "facilities and treatment" in accordance with service regulations. *See generally MCM*, Chapter V, ¶ 18b(3) (1951 and 1969 ed.). We conclude that this reference to service regulations merely reflects an intent to: (1) avoid having to provide detailed rules governing how to handle disciplinary infractions of confinement rules in the *Manual*,[11] and (2) grant broad discretion to confinement officials in administering confinement facilities.[12]

Absent clear executive intent, we are unwilling to conclude that the last sentence in R.C.M. 304(f) was intended to establish that any violation of a service regulation relating to confinement facilities or the treatment of prisoners would automatically be deemed illegal pretrial punishment and entitle the appellant to credit.

### d. Presidential Intent—R.C.M. 305(k)

█ We next consider how a violation of AFI 31–205 should be addressed vis-à-vis R.C.M. 305. We are to determine whether the military judge erred by not considering subsection (k) as a possible basis for granting the appellant additional confinement credit for the government's failure to adhere to the uniform and commingling provisions of AFI 31–205.[13] We conclude that he did not.

R.C.M. 305 affords servicemembers facing pretrial confinement numerous procedural safeguards, such as the right to counsel and the right to seek review of the confinement decision. *See, e.g.,* R.C.M. 305(f), (h), (i), (j), and (*l*). On appeal, the appellant does not allege any of the enumerated rights afforded in R.C.M. 305 were violated. Instead, she focuses on subsection (k), the remedy section of the Rule. Specifically, the focus is on language added to subsection (k) in 1998 that provides: "The military judge may order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances."

The added language is explicit Presidential recognition of the judicially-created right to confinement credit first established by our superior court in *Suzuki*[14] for "unusually harsh circumstances" and for violations of Article 13. As applied by our superior court, this sentence merely incorporates case law. *See generally United States v. Crawford*, 62 M.J. 381, —— (C.A.A.F.2005); *United States v. Spaustat*, 57 M.J. 256, 261–62 (C.A.A.F. 2002); *United States v. Rock*, 52 M.J. 154, 156 (C.A.A.F.1999). The added language was not intended to create a new or different right to credit; rather, it was intended to incorporate an existing entitlement into the credit rule of R.C.M. 305.

### e. Constitutional and Statutory Considerations—Punishment

The appellant's concern has always been about the conditions of her confinement—

**10.** This provision is the same as that contained in the 2002 edition which was in effect at the time of trial.

**11.** *See* Major William H. Conley, Legal and Legislative Basis—Manual for Courts–Martial, *Apprehension and Restraint* (1951) ("[P]unishment is authorized for infractions of the disciplinary rules of the confinement facility concerned. Such rules, including the authorized punishments, are to be set out in departmental regulations rather than in this manual.").

**12.** *See* Major William H. Conley, Legal and Legislative Basis—Manual for Courts–Martial, *Apprehension and Restraint* (1951) ("It will be noted that the provision of the manual pertaining to the facilities, accommodations, treatment, and training to be accorded prisoners being held for trial or the results of trial is to be implemented in

pertinent regulations. This provision was purposely designed to afford the authorities charged with the administration of confinement facilities the opportunity to prescribe, within their judgment, the necessary rules subject, of course, to the prohibition against the imposition of unauthorized punishment or penalties.").

**13.** This issue ordinarily would be considered waived because the appellant failed to raise R.C.M. 305(k) as a basis for additional administrative credit at trial. *See United States v. Chapa*, 57 M.J. 140, 142 (C.A.A.F.2002). Nonetheless, we will not apply waiver in this case because a panel of this Court specified this issue pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c). *See United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990).

**14.** 14 M.J. at 492.

conditions inconsistent with Air Force regulatory requirements. Thus, it is our view that the most appropriate way to review her complaint about the regulatory violations and conditions surrounding her pretrial confinement is to determine if they were unduly rigorous (Article 13), "unusually harsh" (R.C.M. 304(f); *Suzuki*), or failed to reasonably relate to a legitimate governmental objective (*Bell*).

Whether an individual has been subjected to illegal pretrial punishment is primarily a matter of constitutional and statutory interpretation. The constitutional framework for evaluating conditions of pretrial confinement is found in *Bell*, 441 U.S. at 538–39, 99 S.Ct. 1861:

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

■ The statutory prohibition against pretrial punishment is found in Article 13, which provides that no person being held for trial may be subjected to punishment other than arrest or confinement, and that the arrest or confinement may not be more rigorous than necessary to assure his or her presence at trial. *King*, 61 M.J. at 227. This provision is conceptually the same as that required by the Due Process Clause of the Constitution. *United States v. James*, 28 M.J. 214, 215–16 (C.M.A.1989). Our superior court has identified two types of activities that constitute a violation of Article 13.

First, like RCM 304(f) . . . it prohibits the imposition of punishment or penalty prior to trial. Such an imposition entails a purpose or intent to punish an accused before guilt or innocence has been adjudicated.

. . . .

Second, Article 13 proscribes infliction of unduly rigorous circumstances during pretrial detention which, in sufficiently egregious circumstances, may give rise to a permissible inference that an accused is being punished, or may be so excessive as to constitute punishment.

*McCarthy*, 47 M.J. at 165 (citations omitted). *See also United States v. Smith*, 53 M.J. 168 (C.A.A.F.2000).

The appellant concedes that confinement and military officials never intended to punish her. Instead, she argues that being commingled with convicted prisoners and having to wear a similar uniform were unduly rigorous conditions that give rise to a permissive inference that she was being punished.

De minimis impositions on an accused held for trial do not require credit under Article 13. *United States v. Corteguera*, 56 M.J. 330, 331 (C.A.A.F.2002) (citing *United States v. Fricke*, 53 M.J. 149, 155 (C.A.A.F.2000)). And failure to complain about pretrial confinement while subject to such conditions is "strong evidence" that an accused was not punished illegally. *Palmiter*, 20 M.J. at 97. Although a violation of AFI 31–205 could permit a factfinder to infer there was an intent to punish or led to unduly rigorous conditions, such an inference is not required to be drawn.

■ Commingling of pretrial and sentenced prisoners may violate Article 13, if it is intended to punish the pretrial prisoner or is unrelated to any legitimate government purpose. *Id.* at 95. However, there is no per se prohibition against commingling. *Id. See also Bell*, 441 U.S. at 539, 99 S.Ct. 1861. Rather, "[c]ommingling with post-trial inmates is a factor to consider when assessing conditions of confinement, but alone it is not a per se violation of Article 13." *King*, 61 M.J. at 228.

■ Requiring servicemembers to "wear special uniforms prescribed only for post-trial prisoners" may also constitute unlawful pretrial punishment. *See* R.C.M. 304(f). But such a practice is not a per se violation of Article 13 if it is "consistent with the

internal operating procedures of the jail" and applies to all detainees. *See James,* 28 M.J. at 216. *See also United States v. Marston,* 22 M.J. 850, 851 (A.F.C.M.R.1986) (denying a pretrial confinee the privilege of wearing rank insignia was not a condition so "onerous" as to warrant additional administrative credit).

█ We conclude that military officials did not act arbitrarily in placing the appellant in Solano County confinement facilities. The appellant failed to establish any evidence to suggest military officials singled her out for punishment by ordering her into a civilian confinement facility where segregation of pretrial detainees from adjudged and sentenced prisoners was not consistently achieved, or where she would be unable to wear her battle dress uniform or other attire that would distinguish her from adjudged prisoners. *See James,* 28 M.J. at 216.

Similarly, the appellant failed to establish any evidence to suggest that civilian confinement personnel held such improper motives. The rules of the Solano County confinement facilities concerning the wear of uniforms were based on security reasons, and thus involved legitimate, nonpunitive, governmental objectives. As the military judge noted at trial, it is only logical that military members would have to abide by a civilian facility's rules and regulations.

The appellant also failed to meet her burden that the commingling of pretrial and post-trial prisoners led to onerous conditions warranting additional pretrial confinement credit. *See Palmiter,* 20 M.J. at 95. The appellant's failure to complain about these conditions before trial is some evidence these circumstances were not unduly rigorous or unusually harsh. *See id.* at 97.[15]

Consequently, we conclude the military judge did not abuse his discretion when he declined to award the appellant additional pretrial confinement credit under any of the theories discussed above. Moreover, under these circumstances, we find no legal error in

the military judge's discretionary decision not to award extra credit. *See Moore,* 32 M.J. at 60.

### Conclusion

The findings and the sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and the sentence are

AFFIRMED.

Judge FINCHER participated in this decision prior to his reassignment.

MATHEWS, Judge, with whom Judges JOHNSON, SMITH, and JACOBSON join, concurring in part and dissenting in part:

This case presents the question: Must the government obey its own laws? Today, regrettably, a majority of this Court concludes it need not.

We write separately to dissent from the majority's conclusion that military officials at Travis AFB acted reasonably and within the scope of their discretion when they ordered the appellant confined under conditions that violated the regulations of the Secretary of the Air Force and executive orders of the President of the United States. We do not believe that a Presidential order mandating compliance with service regulations should be interpreted to "[g]rant broad discretion" to violate those regulations. Finally, we disagree with the majority's view that there is no remedy here for a violation of R.C.M. 304(f) that includes a grant of confinement credit.

We join in that portion of the majority opinion affirming the appellant's conviction. Because we do not concur with the majority's disposition of the specified issue in this case, however, we respectfully dissent.

As the majority opinion notes, the parties found little to dispute about the basis for the

---

**15.** We note that strict adherence to the Instruction could have led to conditions much harsher than what the appellant endured. For example, wear of a uniform that was different from civilian inmates might have lead to problems where a

military detainee would be singled out for ridicule or different treatment. The drafters of the Instruction clearly did not intend such an "illogical and anomalous result." *See generally Palmiter,* 20 M.J. at 94.

appellant's confinement or the circumstances of her incarceration. The appellant was, as she admitted at trial, a drug addict; her craving for cocaine and methamphetamine reduced her to such a wretched state that she was willing to steal from her fellow officers and disobey her commander's order restricting her to base. When the appellant violated her commander's restriction order she left him no alternative but to place her in pretrial confinement. The appellant does not challenge her commander's decision. She does, however, challenge the propriety of the conditions under which she was confined.

In examining this issue, we considered facts from the record of trial and allied papers not addressed in the majority opinion. Those facts are set forth below.

### Additional Background

The violations of AFI 31–205 cited by the appellant were well known to the government prior to her trial. The trial counsel conceded that Solano County confinement facility officials previously advised authorities at Travis AFB that the county did not comply with AFI 31–205's prohibitions against commingling pretrial detainees and convicted criminals. The government was further on notice that detainees held by the county were required to wear the same uniforms as convicts. County officials advised the authorities at Travis AFB that they had no intention of ever complying with Air Force standards on commingling or the wear of prisoner uniforms.

There were, according to the trial counsel, "[n]umerous" challenges by detainees to the incarceration plan used by Travis AFB prior to the appellant's trial. Despite these challenges, and although the government was aware that the county facilities did not conform to the requirements of the law embodied in AFI 31–205, the government did not change its practice of using the county as its jailor. Furthermore, the record discloses no effort by any official at Travis AFB to bring the conditions of the appellant's detention by Solano County into line with AFI 31–205.

The government took no steps to move the appellant to a suitable military facility, nor did it apparently even consider doing so, until 7 May 2004. On that date, the government lost a motion for pretrial confinement credit filed by the accused in *United States v. Fletcher*, an unrelated case. The accused in that case was also incarcerated in the Solano County jails and subjected to substantially the same conditions as the appellant. The military judge in *Fletcher* awarded the accused two-for-one credit against his time spent in the county jails. According to representations by the trial counsel, the government immediately "contemplate[d]" moving the appellant to a military confinement facility.[16] Travis AFB officials, not named by the trial counsel, even went so far as to calculate the cost of the move. According to the trial counsel, however, those officials eventually concluded that moving the appellant to a facility that obeyed the AFI would be "more of a burden" than leaving her in one that did not; and the appellant remained locked up in the county jails. The record does not disclose when this decision was made, but based on the representations of the trial counsel and the scheduling memoranda in the record of trial, we conclude it was no earlier than 26 May 2004. There is nothing in the record that reflects when this decision was communicated to the appellant, although we infer it must have been sometime prior to the filing of her motion seeking additional confinement credit. That motion was filed on 18 June 2004.

The appellant was first represented by Captain (Capt) T, the Area Defense Counsel (ADC) at Travis AFB. Capt T served as the appellant's counsel at her pretrial confinement review hearing and later helped to negotiate the appellant's pretrial plea agreement. The appellant released Capt T on 17 May 2004, a little more than five weeks prior to trial. The record does not disclose the basis for her decision to release him; but her release letter indicates no dissatisfaction with his representation and we see nothing amiss in his release.

---

16. Although trial counsel characterized the government's inquiries in this regard as ones taken "on its own," she admitted they were actually made "[i]n response to" the ruling in the *Fletcher* case.

At trial, the appellant was represented by Capt M, the ADC at Beale AFB. The record does not disclose the date Capt M was detailed to represent the appellant, but his name does not appear on any scheduling correspondence prior to 25 May 2004. We infer there was some period of time during which Capt M sought to familiarize himself with the facts and circumstances of the appellant's case and her pretrial confinement. The record does not disclose how long it took him to come up to speed, but his first action on her behalf, on 18 June 2004, was to file a motion for pretrial confinement credit based upon violations of AFI 31–205.

### Discussion

#### a. Introduction

The military judge found that the appellant's pretrial confinement violated AFI 31–205 because she was commingled with convicted criminals. The government does not contest this finding, and the majority opinion likewise finds the terms of the appellant's confinement violated the Instruction. Our review of the record leads us to the same conclusion. Moreover, the violation was not inadvertent or accidental: AFI 31–205, a mandatory regulation issued under the authority of the Secretary of the Air Force, was knowingly and deliberately violated.

To the extent that the majority opinion suggests that, in addition to AFI 31–205, the government violated R.C.M. 304(f), we concur. R.C.M. 304(f) forbids requiring detainees to wear the special uniforms prescribed for convicts and commands that "Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned." Neither of these requirements were followed during the appellant's incarceration in the Solano County confinement facilities.

We part company with the majority on the import of these violations. The majority opinion concludes that the base officials "did not act arbitrarily" by placing the appellant in a jail where they knew she would be commingled with convicted criminals. We do not doubt they had a reason for their decision. But *purposeful* is not the same as *permissible.* No matter how much verbiage is deployed in an effort to justify their ac-

tions, the fact remains: By commingling the appellant with convicted criminals, the base officials here violated the law.

In light of that initial violation, the majority suggests, "strict adherence" to the provisions of AFI 31–205 and R.C.M. 304(f) requiring different uniforms for detainees and convicts might have had a negative impact on the appellant; and so there was no need to comply with those rules. While we agree with the majority that the base's decision to violate the prohibition against commingling made compliance with other rules more challenging, we see that fact as a basis for simply following the law in the first place. We are not sanguine about justifying one violation with another, nor are we persuaded by the majority's assertion that the appellant was not "singled ... out" for unlawful treatment. The government should not be excused for its failure to follow the law merely because it did so routinely.

As explained more fully below, we believe that the provisions of R.C.M. 304(f) which mandate compliance with service regulations provide a basis for corrective action. We would award the appellant the two-for-one credit for pretrial confinement she requested at trial.

#### b. History of the Prohibition Against Commingling

For nearly 30 years, commingling detainees with convicts was considered a per se form of punishment in violation of Article 13. *See, e.g., United States v. Bruce,* 14 M.J. 254, 256 (C.M.A.1982); *United States v. Pringle,* 41 C.M.R. 324, 326, 1970 WL 7338 (C.M.A. 1970); *United States v. Nelson,* 39 C.M.R. 177, 181, 1969 WL 5941 (C.M.A.1969); *United States v. Bayhand,* 21 C.M.R. 84, 92–93, 1956 WL 4553 (C.M.A.1956). This rule remained in place until 1985, when, citing "the commendable changes in conditions in confinement facilities effected by the military services," Judge Cox announced "the time has come to formulate new guidelines" in *Palmiter,* 20 M.J. at 95. Henceforth, he wrote, commingling "without more" would no

longer be considered a violation of Article 13. *Id.* at 96.[17]

Judge Cox's "new guidelines" did not initially command support from a majority of the court. Chief Judge Everett, treating *Palmiter's* request to be commingled as waiver, concurred in the result but wrote separately to affirm the vitality of the per se rule. *Id.* at 98–100. Judge Fletcher—who had only a short time before authored a decision reaffirming the rule against commingling [18]—did not participate. Over time, courts have come to accept that commingling does not, in itself, amount to a violation of Article 13. But this does not end our analysis.

The mere fact that courts no longer automatically equate commingling with a violation of Article 13 does not mean that commingling is no longer prohibited. The statutory requirements of the UCMJ place a floor on the acceptable standards of government behavior, not a ceiling. As our superior court has long held, "either the President in promulgating the Manual for Courts–Martial or the Armed Services by adopting regulations can go even further than the Constitution and the Uniform Code in providing safeguards for military personnel." *United States v. McGraner*, 13 M.J. 408, 414–15 (C.M.A.1982).

In the wake of *Palmiter*, the services were free to adopt rules explicitly permitting commingling of pretrial detainees and convicted prisoners. The Air Force chose not to do so. The services could have, in the alternative, issued rules silent on commingling, thus allowing the authorities at each confinement facility discretion to mix detainees into the general prison population as they saw fit. The Air Force chose not to do that, either. Instead, the Air Force issued regulations *forbidding* the practice of commingling. AFI 31–205, ¶ 5.8.1.2. We do not view this decision as inadvertent, for in successive years the Air Force revised its regulations to clarify and strengthen the prohibition.[19]

#### c. Relief Under R.C.M. 304(f)

"It is well-settled that a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests." *United States v. Russo*, 1 M.J. 134, 135 (C.M.A.1975) (*citing American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970)). Rules against commingling of detainees and convicts serve precisely that function. *Palmiter*, 20 M.J. at 98 (Everett, C.J., concurring). There is no advantage to the government in providing pretrial detainees cells and sleeping areas separated "by sight" from those of convicts. AFI 31–205, ¶ 5.8.1.2.[20] The benefit to the detainee, on

---

17. The growing trend toward "outsourcing" of traditional governmental functions may require a fresh look at the law. We are not certain that *Palmiter*, with its explicit reliance on improvements in military confinement facilities, should be applied to civilian facilities. We note in particular that the agreement between the base and county in this case levied no obligation to abide by any military standard of safety or discipline. Although Solano County pledged, at a minimum, to comply with California standards for accreditation, we are not reassured by this promise. As the State Senate of California recently wrote, concerning conditions in California correctional facilities: "The prison system has become an environment where the majority of those incarcerated learn more criminal behavior rather than corrective behavior ... Prison gangs are difficult to control. Both inmates and correctional officers are victims of assault. Drug trafficking occurs despite [corrections department] attempts to thwart drug abuse." California State Senate, *Oversight of State Prisons*, http://www.sen.ca.gov/oversight/prisons.htp (last visited 26 Apr 2006).

18. *Bruce*, 14 M.J. at 256.

19. The 1997 version of the Instruction, for example, contains the following direction to confinement officials: "House pretrial and post-trial prisoners in separate cells or areas. They may use the same common areas." AFI 31–205, *Corrections Program*, ¶ 28.1 (1 Mar 1997). Identical language appeared in the 1 January 1999 edition. Two years later, the language was changed to specify that detainees should have separate sleeping areas. AFI 31–205, *The Air Force Corrections Program*, ¶ 5.8.1.2 (9 Apr 2001). The version in effect at the time of the appellant's trial called for areas separated "by sight." It also added a mandate, not present in the previous editions, for compliance with Article 13. AFI 31–205, ¶ 5.8.1.2.

20. Indeed, the government attempted here to excuse its violation of the AFI by bemoaning the "burden" and "expense" of segregating the appellant from the general prison population.

the other hand, is easy to discern. As Chief Judge Everett noted, commingling necessarily subjects a person still entitled to a presumption of innocence to both social stigma and the risk of direct harm from the depredations of convicted criminals. *Palmiter*, 20 M.J. at 98. By forbidding commingling, the AFI protects pretrial detainees against such harm.[21] The appellant therefore has standing to seek relief for the government's violation. *See United States v. Green*, 14 M.J. 461, 464 (C.M.A.1983).[22]

The majority questions whether AFI 31–205 sets forth an "independent basis" for granting relief to an illegally-commingled detainee. This query, it seems to us, is too narrow. The Instruction prescribes rules for application of pretrial confinement credit granted by the military judge, the convening authority, or by the appellate courts, but does not concern itself with the basis for such credit, whether awarded for commingling or for anything else. See AFI 31–205 ¶ 5.7.1.

The Instruction cannot be read in isolation. It is incorporated by reference into the *Manual* by the mandatory language of the last sentence of R.C.M. 304(f): "Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned." AFI 31–205 is, for the Air Force, that regulation. It is therefore necessary to consider both the R.C.M. and the Instruction in order to give meaning to either.

The majority opinion concludes that R.C.M. 304(f) provides no basis for relief, because the Drafters' Analysis says the Rule

is "based on" Article 13; and no Article 13 violation occurred here. The phrase "based on," however, does not mean "limited to." R.C.M. 304(f) on its face contains provisions not set forth in Article 13. We would give full weight to those additional provisions.

Relying on the Drafters' Analysis, the majority contends that "the President was not trying to expand the law" beyond the requirements of Article 13 in enacting R.C.M. 304(f). As noted above, the plain language of the Rule itself undermines this claim. Moreover, the majority opinion overlooks the portion of the Drafters' Analysis stating the Rule is not based only on Article 13,[23] but also on paragraph 18b(3) of the 1969 *Manual*. According to our superior appellate court, paragraph 18b(3)—which, like the current R.C.M. 304(f) contained provisions mandating detainees be afforded facilities and treatment in accordance with regulation—*did* expand on the terms of Article 13. *Palmiter*, 20 M.J. at 93.

It is beyond cavil that the President has the authority to levy protections for members of the armed forces greater than expressly provided by the UCMJ, and such additional protections must be honored by the appellate courts. *See* Article 36, UCMJ, 10 U.S.C. § 836; *see generally United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F.1997). We view R.C.M. 304(f) as embodying the Commander–in–Chief's intent that any Soldier, Sailor, Airman, or Marine, wherever stationed, detained prior to trial be afforded all of the protections mandated by the appropriate service Secretary. Where those pro-

---

**21.** The majority opinion points out how convicts in the general confinement population may single out for unfavorable treatment a detainee who insists on his military rights, such as the right to wear his military uniform, without ever seeming to realize that this is perhaps the strongest rationale *against* commingling. Indeed, there are many forms of pressure that could work to the disadvantage of a commingled detainee. A detainee who did not "volunteer" to perform the same details as his cellmates might fear being ill-treated by those required to work. A detainee who insisted that he was not guilty or who simply refused to discuss his case might likewise worry that he would be looked at as though he were trying to put on airs. The Japanese proverb proclaims "The nail that sticks up gets hammered down," but a properly-segregated pretrial detainee need not fear such treatment.

**22.** As the majority opinion notes, our superior appellate court recently granted a writ of mandamus enforcing the anti-commingling provisions of AR 190–47. *Kreutzer*, 60 M.J. at 453. While we believe this treatment of an analogous sister service regulation supports our position, we analyzed AFI 31–205 independently of the *Kreutzer* decision.

**23.** Other military appellate courts have consistently treated Article 13 and R.C.M. 304(f) as separate, though related, provisions. *See, e.g., McCarthy*, 47 M.J. at 165; *United States v. Inong*, 57 M.J. 501 n. 1 (N.M.Ct.Crim.App.2002); *United States v. Herrin*, 32 M.J. 983, 986 (A.C.M.R.1991).

tections are not afforded, the President's intent is equally plain: According to the same Drafters' Analysis relied on by the majority, "The remedy for a violation of this rule is meaningful sentence relief." *MCM*, A21–16.

Clearly, the Solano County confinement facilities cannot be said to meet R.C.M. 304(f)'s requirement of "facilities and treatment under regulations of the Secretary concerned" when those jails' facilities and treatment of pretrial detainees do not, have not, and will never comply with the applicable mandatory service instruction. We therefore would follow the approach of our sister service court in *Herrin*, which, after likewise concluding that commingling in violation of the applicable service regulation amounted to a violation of R.C.M. 304(f),[24] granted the appellant meaningful sentence relief. *United States v. Herrin*, 32 M.J. 983, 986 (A.C.M.R. 1991).[25]

### d. Other Bases for Relief

As noted above, we would apply R.C.M. 304(f) to the case at hand. We pause, however, to examine two additional potential bases for relief that merit discussion in their own right.

### 1. Relief under R.C.M. 305(k)

As the majority opinion notes, R.C.M. 305(k) permits—but does not require—additional credit for "pretrial confinement that involves an abuse of discretion or unusually harsh circumstances." The majority opinion limits the term "abuse of discretion" to violations of Article 13, and nothing more. We believe that, had the President wished to limit relief in the manner proposed by the majority, he would have said so; but neither the text nor the Drafters' Analysis of R.C.M. 305(k) contains such a limit. We view the President's broader language as worthy of broader interpretation. To the extent that

24. Although the Army regulation at issue has since been revised, prompting reversal of those portions of *Herrin* which relied upon it, *United States v. Quintero*, 54 M.J. 562, 567 (Army Ct. Crim.App.2000), the Army court's reasoning remains persuasive.

25. The majority opinion appears to place great weight on the absence of any punitive intent by

confinement officials may be tempted to exceed the scope of their discretion for reasons of convenience or other extraneous matters, R.C.M. 305(k) serves as a disincentive for such conduct.

The majority opinion concludes that confinement officials have "broad discretion ... in administering confinement facilities." We agree with that general proposition of law; but the discretion of the confinement officers, while broad, is not unfettered. Indeed, the very concept of discretion presumes a range of choice, limiting the options of the decision makers. Within that range, the decision may go either way; but outside it, the decision makers abuse their discretion. *Kern v. TXO Production Corp.*, 738 F.2d 968, 971 (8th Cir.1984). *See also United States v. Eversole*, 53 M.J. 132, 141 (C.A.A.F.2000) (Gierke, J., dissenting); *United States v. Siroky*, 44 M.J. 394, 398 n. 1 (C.A.A.F.1996).

The adoption of the prohibition against commingling in AFI 31–205 limited the range of choices available to Air Force confinement officials. Placing the appellant in a confinement facility where she was commingled— indeed, where there was never any real question but that she would be commingled—was an abuse of their discretion. "It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) and *Service v. Dulles*, 354 U.S. 363, 379, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)). "It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law." *Dilley*, 603 F.2d at 920. R.C.M. 305(k) embodies that duty as it applies to military pretrial detainees.

Travis AFB officials in placing the appellant in the Solano County confinement facilities. We agree that the government was, in this instance, likely motivated more by its own convenience and parsimony than any actual malice. However, like the *Herrin* court, we find no exception for good intentions in the Presidential command embodied in R.C.M. 304(f).

Because the conditions of the appellant's confinement involved an abuse of discretion, R.C.M. 305(k) applies here. The military judge's analysis of the appellant's motion missed this point because it focused on the intent of the appellant's commanders without any consideration of whether they acted within the scope of their authority. We would find that R.C.M. 305(k) provides the appellant an additional basis for relief.

### 2. Relief under Article 13

When the Court of Military Appeals concluded that commingling "without more" no longer equates to a violation of Article 13, it left open the question of *how much* more would be needed to tip the scales. *Palmiter*, 20 M.J. at 96. So far as we have been able to ascertain, that question remains open today.

We believe that confining a detainee in a civilian institution without the benefit of military standards of safety and discipline; in violation of applicable military regulations and executive orders; where even the state authorities recognize the prevalence of anarchic conditions such as those described by the California Senate, all add up to the something "more" contemplated by Judge Cox. We would therefore find a basis for relief under Article 13, as well.[26]

### *Conclusion*

Military duties originate from many sources, including regulations like AFI 31–205. *See MCM*, Part IV, ¶ 16c(3)(a). Military members who fail to comply can be punished for dereliction of duty, whether the failure is negligent or—as here—willful. *MCM*, Part IV, ¶ 16c(3)(c). Air Force records show that in 2003 and 2004,[27] 118 individuals were cited for dereliction of duty at Travis AFB in courts-martial or nonjudicial

punishment proceedings under Article 15, UCMJ, 10 U.S.C. § 815. The availability and frequent use of this sanction, however, apparently was not enough to secure compliance from Travis officials with the requirements of the AFI. Neither, apparently, was the added weight of Presidential authority embodied in the Rules for Courts–Martial. The trial counsel's candid admission that the government determined moving the appellant would not be "worth the time and expense" suggests that they instead made a calculated decision to accept some judicial relief for the appellant as the cost of continuing to violate the law.

We do not share the majority's conclusion that the President, by mandating compliance with regulations like AFI 31–205, intended to grant base officials "broad discretion" to *not* comply. The orders of the Commander–in–Chief are not optional. The service Secretaries have discretion to craft rules for the treatment of prisoners that are consistent with the Constitution and applicable statutes; but jailors do not have discretion to pick and choose which rules they will obey.

The focus of the military judge, and of our learned colleagues in the majority, on whether the base officials acted with intent to punish the appellant is, in our view, misplaced. There is no evidence of any intent to punish the appellant, but ample evidence of a willful disregard for the law. We see no grounds in the language or the history of the Instruction or the Rule for engrafting escape clauses to the clear mandates of AFI 31–205 or R.C.M. 304(f) simply because local officials deem compliance not worth the effort; nor do we find any public policy basis for carving out such an exception. Indeed, we believe just the opposite to be true: The public interest in seeing the law upheld far exceeds

---

**26.** Although the appellant apparently did not seek relief until shortly before trial, we do not find her failure dispositive, especially in light of the several weeks in which the government claims to have sought alternative confinement facilities; the problems of continuity inherent in the appellant's change of counsel; and the government's clear determination to keep the appellant where she was no matter what the law required. Further, we note the trial counsel's claim that the government itself "was not put on notice" that AFI 31–205 would be enforced by a

court-martial until the Fletcher case, and regard the appellant's position as analogous to that of the appellant in *United States v. Combs*, 47 M.J. 330, 334 (C.A.A.F.1997). Although the obligations of the government were clear, neither she nor the government were fully aware of her right to enforce them.

**27.** The years the appellant committed her offenses, was confined, and was subsequently brought to trial.

the fleeting interests of expediency or convenience. Rules for Courts–Martial or service regulations deemed too onerous can be changed by the appropriate authorities; but they must not simply be ignored.

Inasmuch as we have concluded the appellant had standing to challenge the conditions of her confinement, we would give full effect to R.C.M. 304(f), requiring compliance with AFI 31–205 and granting meaningful sentence relief. The military judge erred in failing to do so, and instead gave tacit approval to a violation of the law. We cannot join in giving the imprimatur of this Court to such a decision; and we therefore, respectfully, dissent.