IN THE CASE OF


UNITED STATES, Appellee

v.

Deandrea J. KING Jr., Airman Basic
U.S. Air Force, Appellant

No. 05-0044

Crim. App. No. 35653

United States Court of Appeals for the Armed Forces

Argued May 3, 2005

Decided July 19, 2005

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., CRAWFORD, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain John N. Page III (argued); Colonel
Carlos L. McDade, Major Terry L. McElyea, Major Sandra K.
Whittington, and Captain Jennifer K. Martwick (on brief).

For Appellee:  Captain Stacey J. Vetter (argued); Lieutenant
Colonel Robert V. Combs and Lieutenant Colonel Gary F. Spencer
(on brief).

Military Judge:  Gregory E. Pavlik


**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Airman Basic Deandrea J. King Jr. pleaded guilty to attempting to possess cocaine and ecstasy and to breaking restriction in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934 (2000). A military judge sitting as a general court-martial sentenced King to a bad-conduct discharge and nine months of confinement. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. King, No. ACM 35653 (A.F. Ct. Crim. App. Aug. 19, 2004).

Article 13, UCMJ, 10 U.S.C. § 813 (2000), provides:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

King, who was held in pretrial confinement at the hands of military authorities from March 9, 2003 until he was tried on June 26 and 27, 2003, argues that his custody status as a "maximum security" prisoner and the conditions of his confinement constituted illegal pretrial punishment and he should have been awarded credit for a violation of Article 13, UCMJ. We granted review to determine whether the military judge

2

erred in denying King credit for pretrial punishment.[1]  We agree in part with King that he is entitled to confinement credit for a violation of Article 13, UCMJ.

FACTS

King, who was pending administrative discharge from the Air Force, and a companion went for a night on the town despite the fact that King was on restriction as the result of nonjudicial punishment.  During the evening King purchased what he thought were cocaine and ecstasy from an undercover agent.  King was initially detained by civilian authorities from February 7 to March 3, 2003.  After being released by civilian authorities, he was involved in a disturbance at the enlisted club.  King subsequently was placed in pretrial confinement at Barksdale Air Force Base (AFB), Louisiana.  At the time he was confined, King's commander listed a number of offenses in support of pretrial confinement including:  the failure to obey regulations (underage drinking and weapons violations); use of a controlled substance (two offenses); the "wrongful use" of a controlled substance with the intent to distribute; breaking restriction; disturbing the peace; and the failure to obey an order.

---

[1] We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN DENYING
> APPELLANT CREDIT UNDER ARTICLE 13, UCMJ.

After an initial evaluation, confinement officials classified King as a "maximum security" prisoner. He was confined in a double occupancy cell with another maximum custody pretrial inmate. The general conditions and restrictions imposed upon King as a maximum custody inmate included:

1. Remaining in the cell with the exception of appointments or emergencies;

2. Eating all meals in the cell (meals were delivered to the cell);

3. No library or gym privileges (books and gym equipment were delivered to the cell);

4. No sleeping during duty hours;

5. A requirement to wear a yellow jumpsuit and shackles when released for appointments; and

6. Two escorts, one of whom was armed, whenever King was moved to appointments.

King was permitted to watch a television that was placed outside the cell but close enough for him to reach out and change the channels. When he was moved outside the confinement facility, it was usually early in the morning and through alternate entrances to minimize public contact.

When the inmate with whom King shared the cell was convicted at court-martial, confinement officials requested a waiver of the rules against commingling pretrial and post-trial prisoners. This request was based on the limited confinement facilities at Barksdale AFB. When that request was denied, King

was moved on May 1, 2003 to a "6 by 6 by 8" windowless segregation cell until May 14.

During King's pretrial confinement, his defense counsel requested that King be released from pretrial confinement or that his custody status be "downgraded." In response, defense counsel received a memo from King's commander on May 2, 2003 declining to order King's release and a memo from the confinement officer on May 12, 2003 responding to counsel's custody concerns. King remained a maximum security inmate throughout his entire period of pretrial confinement.

At trial, defense counsel made a motion for appropriate relief asserting that the conditions of King's pretrial confinement amounted to punishment under Article 13. After receiving evidence and hearing argument on the motion, the military judge denied relief, finding that "[t]he conditions were based on legitimate non-punitive reasons. The conditions of [King's] confinement were not more rigorous than necessary."

## DISCUSSION

King argues that his classification as a maximum custody inmate was more rigorous than required to ensure his presence for trial and to satisfy the Government's concerns for safety in the confinement facility. He claims that not only was he incorrectly classified when he entered pretrial confinement but also that his continued classification as a maximum security

5

inmate constituted punishment. Further, King asserts he was unlawfully punished by being commingled with a sentenced prisoner and later when he had to endure two weeks of solitary confinement after the request for a waiver of the prohibition against commingling pre- and post-trial prisoners was denied.

The Government counters that there was no intent to punish King and no conditions of his pretrial confinement were more rigorous than required by the circumstances. The Government argues that King's history and the potential charges against him, as well as the responsibilities of confinement facility officials, support the finding of no punitive intent and do not support any inference of punishment. The Government asserts that commingling is not a per se violation of Article 13 and that King's segregation was a nonpunitive act by a relatively small confinement facility confronted with limited space and options.

Our determination of whether King endured unlawful pretrial punishment involves both constitutional and statutory considerations. See Bell v. Wolfish, 441 U.S. 520, 535-36 (1979); United States v. McCarthy, 47 M.J. 162, 164-65 (C.A.A.F. 1997); Article 13, UCMJ. We defer to the findings of fact by the military judge where those findings are not clearly erroneous. However, our application of those facts to the constitutional and statutory considerations, as well as any

determination of whether King is entitled to credit for unlawful pretrial punishment involve independent, de novo review.  United States v. Smith, 53 M.J. 168, 170 ((C.A.A.F. 2000); United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F. 2002) ("[W]hether appellant is entitled to credit for a violation of Article 13 is a mixed question of fact and law.");  McCarthy, 47 M.J. at 165; see Thompson v. Keohane, 516 U.S. 99, 113 (1995).  King must establish his entitlement to additional sentence credit because of a violation of Article 13.  See Rule for Courts-Martial (R.C.M.) 905 (c)(2).

Article 13, UCMJ, prohibits two things:  (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial.  The first prohibition of Article 13 involves a purpose or intent to punish, determined by examining the intent of detention officials or by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective."  Bell, 441 U.S. at 539; McCarthy, 47 M.J. at 165, 167.

The second prohibition of Article 13 prevents imposing unduly rigorous circumstances during pretrial detention. Conditions that are sufficiently egregious may give rise to a permissive inference that an accused is being punished, or the

conditions may be so excessive as to constitute punishment. McCarthy, 47 M.J. at 165; United States v. James, 28 M.J. 214, 216 (C.M.A. 1989) (conditions that are "arbitrary or purposeless" can be considered to raise an inference of punishment).

The military judge made no specific finding of fact that the confinement facility officials had any intent to punish King. Rather, the military judge found that "the conditions were based on legitimate non-punitive reasons." Similarly, the Air Force Court of Criminal Appeals found neither punishment nor unduly rigorous conditions.

We have reviewed the findings of the military judge and the circumstances and conditions of King's pretrial confinement, including King's status as a "maximum" custody inmate. We are reluctant to second-guess the security determinations of confinement officials. McCarthy, 47 M.J. at 167-68. The exercise of prosecutorial discretion in determining what offenses to bring to trial does not necessarily alter the security concerns of confinement facility officials. Thus, we do not find that King's continued classification as "maximum" custody was so egregious as to give rise to any inference of intent to punish. Nor do we find the conditions of King's confinement that resulted from his classification to be so excessive as to amount to punishment.

Similarly, we do not find that any departure from the guidelines for evaluation or reevaluation of custody level was indicative of punishment in this instance. Table A3.1 of Air Force Instruction 31-205 (Apr. 2004), provides discretionary authority to increase or decrease a custody level based upon an inmate's behavior. Despite King's apparent good behavior in confinement, any alleged departure from the directive's authority to reclassify "does not justify the conclusion that confinement was a form of punishment or penalty . . . . [and] does not, per se, require awarding additional credit. McCarthy, 47 M.J. at 166, (citing United States v. Moore, 32 M.J. 56, 60 (C.M.A. 1991)).

The fact that defense counsel requested that King be released from pretrial confinement or that his custody status be downgraded is not pivotal. Although the lack of complaint is some evidence that an accused is not being punished in violation of Article 13, the fact that a complaint is made does not necessarily demonstrate punishment or penalty. McCarthy, 47 M.J. at 166. Prisoners can be very vocal about their conditions without those complaints actually reflecting any unlawful pretrial punishment.

Additionally, the fact that King was commingled with a post-trial inmate while a request for waiver was processed does not entitle King to credit. Commingling with post-trial inmates

is a factor to consider when assessing conditions of confinement, but alone it is not a per se violation of Article 13. United States v. Palmiter, 20 M.J. 90, 96 (C.M.A. 1985). Considering these conditions of King's pretrial confinement, we find neither punishment nor unnecessarily rigorous conditions warranting additional administrative credit.

However, we find that King was subjected to punishment during the two weeks he was in segregation following the denial of the confinement official's request for a waiver from the prohibition against commingling. The Government has proffered no explanation as to whether they explored alternatives and no sound reason why King, a pretrial inmate, was singled out and suffered segregation in a six-by-six, windowless cell. Other than a single reprimand for falling asleep in his chair, the military judge found that King was not disciplined, caused no disturbances, made no threats, and was not disrespectful during his pretrial confinement. The decision to confine King in a segregated environment otherwise reserved for inmates with disciplinary problems was an arbitrary response to the physical limitations at Barksdale AFB. We have previously referred to this type of result:

> Given the limited facilities and programs available at most installations, the total separation of pretrial confinees from the general population of the confinement facilities might well result in imposition of much harsher conditions than those

> imposed upon some prisoners who have been
> sentenced to hard labor.  We cannot believe
> that such an illogical and anomalous result
> is necessary or was intended by Congress.

Palmiter, 20 M.J. at 94.  Placing King in a segregated environment with all the attributes of severe restraint and discipline, without an individualized demonstration of cause in the record, was so excessive as to be punishment and is not justified by the Barksdale AFB confinement facility space limitations.  See McCarthy, 47 M.J. at 165; James, 28 M.J. at 216.

King is entitled to appropriate credit.  See R.C.M. 305(k).  We agree with King that an appropriate credit in this instance is three days of administrative credit for each day he endured solitary segregation.  We shall order the appropriate credit.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed except to the extent that it holds that King is not entitled to additional sentence credit for a violation of Article 13, UCMJ.  In addition to any other confinement credits to which he is entitled, King will be credited with service of forty-two days of confinement.