ERDMANN, Judge,
with whom BAKER, Chief Judge, joins (dissenting):
I respectfully dissent from the majority’s conclusion that Kreutzer was not entitled to relief under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813, or Rule for Courts-Martial (R.C.M.) 305, because he remained subject to lawful confinement. The Army Court of Criminal Appeals (CCA) set aside all of the contested findings and Kreutzer’s entire sentence, not just the portion that applied to the death penalty. United States v. Kreutzer, 59 M.J. 773 (A.Ct.Crim.App.2004).[1] Even though Kreutzer remained convicted of the non-capital offenses to which he had pleaded guilty, the CCA remanded his case for possible retrial on the offenses that were set aside and a sentence rehearing.
As Kreutzer was subject to retrial on the offenses that had been set aside and since he had not been sentenced, his trial was not over and he reverted to the same status as a pre-trial confmee, as correctly recognized by The Army Judge Advocate General (TJAG).[2] Therefore the confinement protections of both Article 13, UCMJ, and R.C.M. 305 were available to him for the confinement period in question. Because the government failed to provide any reasons for keeping Kreutzer on death row while he was not under sentence of death and since transfer to an alternative placement at the United States Disciplinary Barracks (USDB) was sufficient to ensure his presence at trial, I would reverse the decision of the CCA and grant Kreutzer four days of credit for each day he was held on death row after the CCA decision vested.
The procedural history pertinent to this appeal is as follows:
• March 11, 2004 — The CCA sets aside the contested findings and the sentence;
• April 7, 2004 — The CCA grants the government’s motion for a thirty-day extension of time in which to file a motion for reconsideration;
• May 10, 2004 — The government files a timely motion for reconsideration with the CCA;
• June 22, 2004 — The CCA denies the request for reconsideration; TJAG orders Kreutzer released from post-trial confinement; Kreutzer is not moved from death row;
• June 29, 2004 — TJAG files a certificate for review with the United States Court of Appeals for the Armed Forces (CAAF);
• July 6, 2004 — Kreutzer submits an Inmate Request Slip to the USDB Com *449 mandant inquiring why he remained on death row;
• July 12, 2004 — USDB Deputy Commandant responded to Kreutzer’s request, stating the Commandant had requested a legal review of his case by the Fort Leavenworth SJA office;
• July 13, 2004 — TJAG revokes his June 22 order releasing Kreutzer from post-trial confinement and authorizes an R.C.M. 305 review;
• July 22, 2004 — Kreutzer submits an Inmate Request Slip to the Mental Health Clinic requesting assistance in being transferred from death row;
• July 25, 2004 — Kreutzer submits an Inmate Request Slip asking to speak personally with the USDB Commandant regarding his continued confinement on death row;
• July 26, 2004 — USDB Commandant informs Kreutzer he will conduct an R.C.M. 305 review to determine if continued confinement is necessary;
• July 27, 2004 — In response to the notice of the R.C.M. 305 review, Kreutzer submits a memorandum to the USDB Commandant requesting to be transferred to the general population until a final sentence is determined;
• August 19, 2004 — Kreutzer submits an Inmate Request Slip to the USDB Staff Judge Advocate asking for a status update on the R.C.M. 305 hearing;
• August 25, 2004 — USDB Commandant issues his R.C.M. 305 decision which determined that continued confinement is necessary but does not address Kreutzer’s death row confinement;
• September 21, 2004 — Kreutzer petitions the CCA for extraordinary relief asking to be removed from death row and placed in the general population;
• September 24, 2004 — The CCA denies the petition for lack of jurisdiction due to the certification to CAAF. Kreutzer v. Harrison, No. ARMY MISC 20040953 (ARMY 9601044) (A.Ct.Crim. App. Sept. 24, 2004);
• September 29, 2004 — Kreutzer petitions CAAF for extraordinary relief asking to be removed from death row;
• January 5, 2005 — CAAF orders Kreut-zer removed from death row. Kreutzer v. United States, 60 M.J. 453 (C.A.A.F. 2005);
• January 13, 2005 — Kreutzer is transferred from death row to protective custody;
• August 16, 2005 — CAAF affirms the CCA decision and order of a rehearing on the sentence based on the affirmed pleas or a rehearing on the greater offenses. United States v. Kreutzer, 61 M.J. 293 (C.A.A.F.2005);
• January 6, 2006 — The convening authority orders Kreutzer into pre-trial confinement, where he remained until his rehearing.
At his retrial on the charges that were set aside by the CCA, Kreutzer requested ten days of sentencing credit for each of the 280 days he was confined on death row between the date he believed the CCA decision became effective and the date of his transfer off death row pursuant to this court’s January 5, 2005 order (April 11, 2004-January 13, 2005). The military judge denied this motion, stating that Kreutzer’s command “was not required to release [him] from death row after the decision by the Army Court of Criminal Appeals while the case was certified by TJAG to the Court of Appeals of the Armed Forces [sic].” The military judge also found that the USDB commander did not act in bad faith by keeping Kreutzer on death row, therefore no relief was warranted.
This case essentially presents two issues: first, whether the government had an obligation to address Kreutzer’s continued confinement on death row at some point following the CCA decision which set aside his death sentence;[3] and if so, is Kreutzer enti- *450 tied to additional pre-trial confinement credit for the time he was held on death row after that decision.
a. Continued Confinement on Death Row
Contrary to the majority’s opinion, this court’s decision in United States v. Miller, 47 M.J. 352 (C.A.A.F.1997), is directly applicable to this case. In Miller, this court held that when a CCA issues an opinion favorable to the appellant, two thirty-day periods run concurrently: the thirty-day period to request reconsideration of the CCA decision (C.C.A. R. 19) and the thirty-day period for certification to this court (C.A.A.F. R. 19(a), 22(b)). Miller, 47 M.J. at 361. If the service Judge Advocate General decides not to further pursue the case by requesting reconsideration from the CCA or by filing a certification with this court, (s)he must notify the convening authority to comply with the CCA opinion or conduct an R.C.M. 305 hearing. Id.
Normally the two thirty-day periods will run concurrently. However, if, as here, the government requests reconsideration of the CCA decision, the two thirty-day periods discussed in Miller are decoupled. If that request is denied, the government then has thirty days from the date of the denial in which to certify the ease to this court pursuant to Rule 19 of this court's rules of practice and procedure. C.A.A.F. R. 19. Once TJAG certifies the issues to this court or the thirty-day period ends without a certification filing, whichever is first, Kreutzer’s interest in the favorable decision of the court below (even if inchoate) required either that he be transferred from death row or a hearing under R.C.M. 305 be held to determine whether his continued confinement on death row was appropriate. Miller, 47 M.J. at 362.
In Kreutzer’s case TJAG filed a timely request for reconsideration at the CCA, which was denied. On June 28, 2004, TJAG certified the issues to this court. Once the certification was filed the government was required to conduct an R.C.M. 305 hearing to determine whether Kreutzer should remain on death row pending the government’s appeal. Kreutzer first requested a transfer from death row on July 6, 2004. While an R.C.M. 305 hearing was eventually conducted in August 2004, the decision did not address Kreutzer’s sole request — that he be transferred from death row. Instead, the R.C.M. 305 decision determined that further confinement was necessary — a status that Kreutzer had never challenged. Kreutzer then remained confined on death row until seven days after this court ordered his transfer in January 2005. Kreutzer v. United States, 60 M.J. 453 (C.A.A.F.2005).
While the majority infers that Kreutzer remained subject to post-trial confinement, that conclusion is not consistent with the action of the CCA which set aside his sentence.[4] According to Dep’t of the Army, *451 Reg. 190-47, Military Police, The Army Corrections System, para. 3-1 (June 15, 2006) [hereinafter AR Reg. 190-47], an accused who is confined pending preferral or disposition of charges or trial by court-martial is a pre-trial prisoner. An accused whose sentence has been announced in open court but not approved by the convening authority is an adjudged prisoner. Id. An accused becomes a sentenced prisoner when the convening authority takes action to approve the confinement portion of the sentence. Id.
The facts in United States v. Combs, 47 M.J. 330 (C.A.A.F.1997), a plurality decision that was concurred in by then-Chief Judge Cox, are directly analogous to Kreutzer’s situation. The Court of Military Review set aside some, but not all, of the findings of guilt against Combs and set aside his sentence. Id. at 330. While he was awaiting rehearing, Combs was stripped of his rank, pay, and privileges, despite his sentence being set aside. Id. at 332. Like Kreutzer, Combs was “ ‘trapped in the twilight of the court-martial process ... adjudicated but un-sentenced,’” after the CCA set aside his contested findings and his entire sentence. Id. at 331 (citation omitted). This court found an Article 13, UCMJ, violation when Combs was stripped of his rank before he was sentenced. Id. at 334. This punishment, like Kreutzer’s confinement on death row without a sentence of death, constituted “ ‘egregious, intentional conduct by command where there is no evidence of a legitimate, non-punitive objective for the conduct complained of, the apparent singling out of an accused for personal humiliation, and restrictions on liberty so oppressive as to be more consistent with the status of prisoner.’ ” Id. at 332 (emphasis omitted) (citation omitted).
At the time TJAG certified the issues to this court, Kreutzer had not been sentenced and the sentence had obviously not been approved by the convening authority. At that point Kreutzer reverted to being a pretrial prisoner and, under Miller, the government was required to conduct an R.C.M. 305 hearing to determine whether he should remain on death row pending the government’s appeal. The 199 days Kreutzer remained on death row while not subject to a sentence of death clearly violated AR Reg. 190-47, para. 12-6.&., which prohibits the commingling of death sentence and non-death sentence confi-nees.[5]
b. Entitlement to Credit
Article 13, UCMJ, prohibits the imposition of punishment prior to trial and conditions of arrest or pre-trial confinement that are more rigorous than necessary to ensure the accused’s presence at trial. In King, 61 M.J. at 227-28, we examined the scope of Article 13, UCMJ:
Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused’s presence for trial. The first prohibition of Article 13, UCMJ, involves a purpose or intent to punish, determined by examining the intent of detention officials or by examining the purposes served by the restriction or condition, and whether such purposes are “reasonably related to a legitimate governmental objective.” Bell [v. Wolfish], 441 U.S. [520,] 539, 99 S.Ct. 1861 [60 L.Ed.2d 447 (1979)]; [United States v.] McCarthy, 47 M.J. [162,] 165, 167 [(C.A.A.F.1997)].
The second prohibition of Article 13 prevents imposing unduly rigorous circumstances during pretrial detention. Conditions that are sufficiently egregious may give rise to a permissive inference that an accused is being punished, or the conditions may be so excessive as to constitute punishment. McCarthy, 47 M.J. at 165; United States v. James, 28 M.J. 214, 216 (C.M.A.1989) (conditions that are “arbitrary or purposeless” can be considered to raise an inference of punishment).
*452 The second prong of Article 13, UCMJ, prohibits conditions of confinement that are more rigorous than necessary to ensure the accused’s presence at trial. Confinement conditions that are “ ‘arbitrary or purposeless’ ” may raise an inference of punishment under Article 13, UCMJ. King, 61 M.J. at 228 (quoting James, 28 M.J. at 216). In Zarbatany, 70 M.J. 169, we recognized that the primary mechanism for addressing violations of Article 13, UCMJ, has been confinement credit. Id. at 174 (citing King, 61 M.J. 225). We noted that “[t]he drafters of the R.C.M. subsequently ‘explicitly recognized’ this practice with the adoption of R.C.M. 305(k) in the 1984 Manual for Courts-Martial, United States (MCM).” Id.
There can be little dispute that Kreutzer’s continued confinement on death row was more rigorous than necessary to ensure his presence at his retrial. Under the circumstances of this case, a transfer from death row would result in Kreutzer being placed in protective custody or some other placement segregated from sentenced prisoners.[6] It is difficult to argue that any level of confinement within the USDB would not be sufficient to ensure his presence at his retrial. It is also difficult to argue that conditions for death row prisoners are not more rigorous than those of other prisoner classifications. USDB Regulation 600-1 states that death sentence prisoners are placed in hand-irons when outside of their living area and in full restraints when outside of the Special Housing unit, and are required to wear an orange jumpsuit instead of the regular brown jumpsuit which constitutes a prisoner’s duty uniform. USDB Reg. 600-1, Manual for the Guidance of Prisoners para. 13-1, 13-3, 13-4 (Aug. 1, 2002). Additionally, an affidavit from a former noncommissioned officer in charge of the USDB mental health clinic stated the differences between protective custody prisoners and death row prisoners were significant. While protective custody prisoners were allowed to socialize, dine, and attend group therapy together, death row prisoners remained in their cells for twenty-three hours a day, were allowed one hour of recreation with one other prisoner per day, and were required to dine alone in their cells. Death row prisoners also were not eligible for group therapy.
In Kreutzer’s case the government admits that there is no evidence on the record as to why he remained confined on death row following the CCA’s decision. The military judge’s finding that the government was not required to transfer Kreutzer from death row once TJAG certified the issues to this court was incorrect as a matter of law. I would find that Kreutzer is entitled to relief under the second prong of Article 13, UCMJ, as his continued confinement on death row was arbitrary and purposeless and more rigorous than necessary to ensure his presence at his retrial.[7]
*453 The government has argued that meaningful relief is unavailable in this ease since Kreutzer received a life sentence. However, there remains the possibility that his life sentence will be converted into a term of years at some point in the future. See Article 74(a), UCMJ, 10 U.S.C. § 874(a) (2006); Dep’t of the Army, Reg. 15-130, Boards, Commissions, and Committees, Army Clemency and Parole Board para. 3-1 (Oct. 23, 1998). As such, relief in the form of sentencing credit under Article 13, UCMJ, is appropriate for this type of violation. Accordingly, under the unique circumstances of this case, I would award four days of sentencing credit for each of the 199 days Kreutzer was confined on death row after the case was certified by the government to this court until his transfer from death row pursuant to this court’s order.[8]

. The court affirms the findings of guilty of the Specification of Charge II and Charge II and the Specification of Charge IV and Charge IV. The remaining findings of guilty and the sentence are set aside. The same or a different convening authority may order a rehearing on Specification 16 of Charge I as well as the set aside portions of Specifications 1-15, 17, and 18 of Charge I and Charge I, the Specification of Charge III and Charge III, and the sentence. If the convening authority determines that a rehearing on these findings is impracticable, he may dismiss those offenses to which appellant pled not guilty and order a rehearing on the sentence only.
59 M.J. at 784-85.

. On June 22, 2004, following the issuance of the CCA decision, TJAG ordered Kreutzer released from post-trial confinement, which reflected a subsequent placement in pre-trial confinement. On July 13, 2004, TJAG ordered an R.C.M. 305 pre-trial confinement review.

. It is important to note what this case is not about. It is not about whether Kreutzer should have been released from confinement after the CCA set aside his conviction for the contested findings (which included all of the death sentence eligible offenses) and the sentence. Kreut- *450 zer recognized that he remained convicted of the offenses to which he had pleaded guilty (all non-death sentence eligible offenses) and throughout these proceedings has only requested that he be transferred from death row after his death sentence was set aside pending further appellate and trial proceedings.

. The majority notes that "Article 13, by its terms, only applies to persons ‘held for trial,’" citing United States v. Inong, 58 M.J. 460 (C.A.A.F.2003). United States v. Kreutzer, 70 M.J. 444, 447 (C.A.A.F. 2012). While I agree that Article 13, UCMJ, applies to persons "held for trial,” the difference in our respective positions is when the trial terminates. I believe that a trial under the UCMJ is not over until all charges have been resolved and the sentence adjudged. The majority asserts that the trial is over once guilt is established on some of the charges, and Article 13, UCMJ, is therefore no longer applicable. Id. at 447 (" ‘Article 13 prohibits ... the intentional infliction of punishment on an accused before his or her guilt is established at trial (quoting Inong, 58 M.J. at 463)). As support for this principle, Inong cites United States v. Fricke, 53 M.J. 149 (C.A.A.F.2000). However, Fricke contains no such statement nor inference and in fact recites the general rule that "Article 13, UCMJ prohibits both the purposeful imposition of punishment on a military accused prior to court-martial and pretrial confinement conditions which are more rigorous than the circumstances required to ensure an accused’s presence.” Id. at 154 (citing United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F.1997)). None of the more recent Article 13, UCMJ, cases decided by this court have employed or referenced that language from Inong. See United States v. Zarbatany, 70 M.J. 169 (C.A.A.F.2011); United States v. Williams, 68 M.J. 252 (C.A.A.F.2010); United States v. Adcock, 65 M.J. 18 *451 (C.A.A.F.2007); United States v. King, 61 M.J. 225 (C.A.A.F.2005).

. The period between the date that TJAG certified the case to this court (June 29, 2004) and the date that Kreutzer was removed from death row (January 13, 2005) constitutes 199 days.

. In our January 5, 2005, order we ordered that Kreutzer be "removefd] ... from death row ... and placefd] ... in appropriate custody in light of the circumstances and status of his case.” 60 M.J. at 453. Upon his transfer from death row on January 13, 2004, Kreutzer was initially placed in protective custody. As Kreutzer was not a sentenced prisoner he could not be placed in the general prison population. His initial placement in protective custody was not unreasonable since the USDB at Leavenworth is not authorized to hold pre-trial prisoners absent special circumstances and does not have a dedicated section for pre-trial prisoners. See AR Reg. 190-47 para. 2-2, 3-2.c. Once this court issued its decision on the certified issue, the Army took the required steps to transfer Kreutzer to a pre-trial facility.

. I note that this court also could find a violation under the first prong of Article 13, UCMJ. That prong can be satisfied by finding an intent to punish or by "examining the purposes served by the restriction or condition, and whether such purposes are 'reasonably related to a legitimate governmental objective.'” King, 61 M.J. at 227. As noted, the legitimate governmental purpose in this area is clearly set forth in AR Reg. 190-47 para. 12-6.1)., which provides that prisoners sentenced to death will not be commingled with other than death sentence prisoners. While "confinement in violation of service regulations does not create a per se right to sentencing credit,” Adcock, 65 M.J. at 23, violation of a regulation can be considered when assessing whether there was an Article 13, UCMJ, violation. King, 61 M.J. at 228. Here there was no evidence on the record as to why Kreutzer remained confined on death row following the CCA’s decision, and the government was unable to identify any legitimate governmental objective or security necessity served by his continued confinement on death row.

. In King, this court awarded three-for-one confinement credit for the period in which King was kept in solitary segregation during pre-trial confinement where the government provided no evidence it explored alternatives to that confinement and no explanation for why he was so confined. 61 M.J. at 229. Comparatively, the government’s actions in this case warrant an award greater than the three-for-one credit awarded in King.