# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Master Sergeant AARON J. LUCERO
## United States Air Force

## ACM 38386

## 01 October 2014

Sentence adjudged 24 April 2013 by GCM convened at McConnell Air Force Base, Kansas. Military Judge: Matthew D. Van Dalen (sitting alone).

Approved sentence: Dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Brett D. Burton; and Gerald R. Bruce, Esquire.

Before

HECKER, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

SANTORO, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of aggravated sexual contact with a child under the age of 12 on divers occasions, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The military judge found the appellant not guilty of raping the same child. The adjudged and approved sentence was a dishonorable discharge, confinement for 6 years, total forfeitures, and reduction to E-1.

Before us, the appellant argues (1) the evidence is legally and factually insufficient to support his conviction; (2) the staff judge advocate's recommendation and the personal data sheet both fail to reflect the 182 days the appellant was in pretrial confinement, requiring a new convening authority action; and (3) he is entitled to additional pretrial confinement credit because he was confined with foreign nationals.[1] We disagree and affirm.

*Background*

In October 2012, an 11-year-old child showed a school counselor a journal entry she had written about her life. The counselor could see a crossed out entry that referred to the child being abused. When she asked the child about it, the child started crying hysterically and became non-communicative. At the counselor's suggestion, the child wrote more details about the abuse.

After school authorities alerted the child's father about the allegations, he asked his daughter what had happened. She told him the appellant had taken her into a bedroom, had her lie on the bed, and put a towel over her face. He was unable to get any more details from her.

When the child's father next saw the appellant, he informed the appellant of the child's allegations. The appellant turned pale and denied raping her. He explained the incident by claiming he had twice placed medication on the child because she had a vaginal yeast infection and also added, "Now I get to spend the rest of my life in jail." The appellant contacted his first sergeant to say he thought he would soon be arrested for child molestation and admitted he had applied cream to the child's vagina. He made a similar statement to a friend.

At trial, the child testified that on two occasions the appellant brought her into his room, made her disrobe and lie on the bed with her legs hanging off the edge, put a towel over her head, spread her legs, and rubbed a liquid on her vagina. After the liquid was put on her vagina, she felt a sharp pain that lasted for a few minutes and then stopped. She also testified that the appellant told her to "relax" and that the pain would go away after a few minutes. The appellant also told her not to tell anyone about this.

The child's mother testified to deny the appellant's claim she had asked him to apply the cream on her daughter. She also described an incident where the child was crying hysterically and said the appellant had her lie on his bed naked. When confronted by the child's mother, the appellant said he had been helping the child with her hygiene.

---

[1] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

The appellant testified and admitted applying cream to the child's vagina but said he had done so for her own benefit and not for sexual gratification. According to the appellant, on two occasions after the child had wet her pants, he told her to take a bath to clean herself. At the conclusion of the bath, as he assisted her out of the tub, he saw that her vaginal lips were red and swollen, and thus he chose to apply the cream. He corroborated the child's testimony that she was naked, on her back, and with a towel on her head when the incident occurred. He denied spreading her legs as she claimed, instead testifying that she did so herself.

He further testified that the liquid he applied was from a tube that had the word "rash" on it. He explained that the tube was in a drawer that contained several tubes of various ointments and creams and that he grabbed the one he thought would work best. The appellant testified that he had never before or since applied cream to the child, and that although the child's mother had not specifically asked him to do so, he thought it was the best thing to do.

*Legal and Factual Sufficiency*

We review issues of factual and legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) (internal quotation marks omitted). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324. "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

Under the law in effect at the time of the offense, the elements of aggravated sexual contact with a child who had not yet attained the age of 12 years are: (1) the appellant engaged in sexual contact with a child and (2) at the time of the contact, the child had not attained the age of 12 years. *See Manual for Courts-Martial* (*MCM*), *United States*, App. 28, ¶ 45.b.(7)(a) (2012 ed.). Sexual contact is "the intentional

touching, either directly or through the clothing, of the genitalia . . . of another person . . . with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person." *MCM*, App. 28, ¶ 45.a.(t). Here, the appellant was charged with and convicted of "touch[ing] the vagina" of the child on divers occasions.

The appellant argues that there was no evidence he touched the child's genitalia. Conceding the child testified she "felt rubbing after cream was applied," the appellant asserts that because she could not see who or what touched her, the evidence is factually insufficient. The testimony of the child and the appellant were consistent in that they were the only two people present when the events occurred. The appellant does not assert that the child touched herself nor does he deny that he applied a substance upon her vagina.

We have reviewed and considered the entire record of trial. We have also made allowances for not having personally observed the witnesses. Having paid particular attention to the matters raised by the appellant, we find the evidence factually and legally sufficient to support his conviction for aggravated sexual contact by touching the child's vagina on two occasions. Although the child's statements to the several people to whom she had to speak about these events contain some inconsistencies, and while she answered "I don't know" to several of the questions asked of her, we are nonetheless convinced beyond a reasonable doubt of the appellant's guilt and also find a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.

*Staff Judge Advocate's Recommendation*

The appellant alleges that the staff judge advocate's recommendation (SJAR) and its addendum were erroneous because they failed to reflect the appellant's 182 days in pretrial confinement. While the Government acknowledges that neither the SJAR nor the personal data sheet reflect the pretrial confinement, it argues that the convening authority was aware of, and considered, the appellant's pretrial confinement before taking action because the pretrial confinement is indicated on the accompanying Air Force Form 1359, *Report of Result of Trial*. The Government further argues that because there is no requirement to advise the convening authority of pretrial confinement served, there was no error in its omission. *See* R.C.M. 1106(d)(3).

Proper completion of post-trial processing is a question of law we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in the SJAR, or on matters attached to the SJAR, waives any later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting

*Kho*, 54 M.J. at 65). An appellant must make some "colorable showing of possible prejudice in terms of how the [perceived error] potentially affected [his] opportunity for clemency." *Id*. at 437.

While we acknowledge that R.C.M. 1106 does not explicitly require the convening authority be advised of pretrial confinement served, here we have more than a simple omission of information. The personal data sheet submitted to the convening authority affirmatively stated, "PRETRIAL RESTRAINT: NONE." The personal data sheet was materially inconsistent with the AF Form 1359, and neither the SJAR nor its addendum explained the inconsistency. We therefore find that there was error and that the error was both plain and obvious.

However, this error does not automatically warrant relief. An error in a post-trial SJAR to the convening authority "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id*.

The appellant argues that the prejudice he suffered was his inability to comment in his clemency submission on "what happened during pretrial confinement and why the convening authority should provide meaningful relief in clemency." However, the appellant fails to demonstrate why he was unable to raise these matters initially, regardless of whether pretrial confinement was reflected in the SJAR. The appellant knew he had been in pretrial confinement; there was nothing preventing him from raising those matters.

Despite the error in the documents provided by the SJA to the convening authority, the appellant himself told the convening authority of his pretrial confinement. In his clemency submission, he wrote, "I have been confined since 24 October 2012," six months before the date of his trial, and he described that confinement's effect upon him. Moreover, by operation of law the appellant's time in pretrial confinement will be credited against his sentence. *See United States v. Allen*, 17 M.J. 126 (C.M.A. 1994). We therefore conclude that the appellant has failed to establish prejudice and therefore reject this assignment of error.

*Pretrial confinement credit*

After authorities at the child's school reported her allegations to local civilian police, a forensic interview of the child was conducted by the local police. Based on the result of the civilian police investigation, the appellant was arrested on 25 October 2012 for two counts of rape and was placed in the Sedgwick County Jail. The Air Force

requested jurisdiction of the case shortly thereafter, but the civilian prosecutor did not cede jurisdiction to the military until 19 February 2013, at which time the appellant left civilian pretrial confinement and was placed into military pretrial confinement on McConnell Air Force Base.

Pursuant to *United States v. Grostefon*, the appellant argues he is entitled to an additional 118 days of pretrial confinement credit because he was housed in Sedgwick County Jail in a large "pod" that also held foreign nationals. We disagree.

In reviewing pretrial confinement issues, we defer to the military judge's findings of fact where they are not clearly erroneous. *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005). We review de novo the application of the facts to the law and whether the appellant's confinement violates Article 12, UCMJ, 10 U.S.C. § 812. *United States v. Wise*, 64 M.J. 468, 473–74 (C.A.A.F. 2007).

Article 12, UCMJ, provides, "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." The "immediate association" language means that military members can be confined in the same jail or brig as a foreign national, but they have to be segregated. *Wise*, 64 M.J. at 476–77.

Under Article 12, UCMJ, a confinee must exhaust his administrative remedies prior to judicial intervention absent unusual or egregious circumstances. *United States v. McPherson*, 73 M.J. 393, 397 (C.A.A.F. 2014). This requirement "furthers two related goals: (1) the 'resolution of grievances at the lowest possible level' with 'prompt amelioration' of the complaint while the prisoner suffers the condition and (2) the development of an adequate record to aid appellate review. *Id*.

This issue was raised at trial, and the military judge made factual findings which were amply supported by the evidence, not clearly erroneous, and which we adopt as our own. The dispositive factual finding on this issue is that during the period the appellant was housed in civilian confinement—the facility in which he alleges he was commingled with foreign nationals—he was held by civilian authorities on civilian charges without Air Force involvement or request. The appellant does not challenge this finding but instead argues that Article 12, UCMJ, proscriptions apply to any authority that confines a military member, regardless of the jurisdiction or basis. Neither we nor our superior court have so held, and we decline to do so today. *See United States v. Escobar*, __ M.J. __, __ (A.F. Ct. Crim. App. 2014) (Articles 12 and 13, UCMJ, "do not provide protection to servicemembers who are confined by a separate sovereign pending criminal prosecution by that sovereign, where such confinement is not at the behest of military authorities"). Furthermore, the appellant made no effort to exhaust his administrative remedies with local confinement facilities or his chain of command before raising this issue with the military judge. We reject this assignment of error.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38386