# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

**Daniel G. EYER**
**Lieutenant (O-3), U.S. Coast Guard**

**CGCMG 0321**
**Docket No. 1417**

**19 September 2016**

General Court-Martial convened by Commander, Seventh Coast Guard District.  Tried at Borinquen, Puerto Rico, on 4 September 2014.

| | |
|---|---|
| Military Judge: | CAPT Christine N. Cutter, USCG |
| Trial Counsel: | LT Frances S. Johnson-Gillion, USCGR |
| Assistant Trial Counsel: | LT Jeremy T. McCall, USCGR |
| Defense Counsel: | LT Kevin R. Larson, JAGC, USN |
| Appellate Defense Counsel: | LT Philip A. Jones, USCGR |
| Appellate Government Counsel: | LT Tereza Z. Ohley, USCGR |

**BEFORE**
**McCLELLAND, JUDGE & HERMAN**
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of two specifications of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ).  The military judge sentenced Appellant to confinement for twenty-four months and dismissal from the service.  The Convening Authority approved the sentence, but suspended confinement in excess of thirteen months in accordance with the pretrial agreement, and also deferred and waived automatic forfeitures, again in accordance with the pretrial agreement.

Before this Court, Appellant has assigned the following errors:

I.   The convening authority did not act until 188 days after sentencing, which prejudiced a substantial right of the accused.

II.  Appellant was ordered to submit an early return of dependents against his will and without considering other viable alternatives, which was pretrial punishment.

We will discuss the second issue first.

**Pretrial punishment**

Appellant asserts that he was ordered to submit a request for early return of dependents from his outside-of-the-continental-U.S. (OCONUS) duty station[1] (ERD), and that this was pretrial punishment, in violation of Article 13, UCMJ. Appellant brought a motion at trial seeking credit for pretrial punishment, which was denied. (Appellate Ex. VI; R. at 149.)

Article 13 prohibits "punishment or penalty other than arrest or confinement" for a person with charges pending against him. This "involves a purpose or intent to punish, determined by examining the intent of . . . officials [imposing a restriction or condition] or by examining the purposes served by the restriction or condition, and whether such purposes are 'reasonably related to a legitimate governmental objective.'" *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). We defer to the military judge's findings of fact unless they are clearly erroneous. We review de novo the legal question of whether Appellant is entitled to credit for unlawful pretrial punishment. *Id.*

On 8 March 2014, Appellant committed the offenses of which he was convicted, abusive sexual contact, against the wife of his co-worker, his next-door neighbor. Appellant was not confined or arrested, but he was provided temporary housing away from his home, while his family remained in the home, and was issued orders to limit his use of his home and back yard, because the complainant lived next door, as well as to limit his movements in other respects. (R. at 86-90, 122, 125-26, 127-30.)[2] More to the point of this Assignment of Error, he was told that

---

[1] Appellant was stationed at Coast Guard Air Station Borinquen, Puerto Rico.
[2] Several attachments to Appellant's motion pertain to this issue and were referenced at trial during proceedings on the motion, but none were explicitly admitted into evidence at the trial; likewise with attachments to the

his wife "would be required to do an ERD and that we . . . were ordered to have that location to the command" by eight days later. (R. at 73.) Appellant did not want to do an ERD, but complied. (R. at 74, 77.)

The offense occurred on 8 March 2014. It was reported almost immediately, and Appellant was given a Military Protective Order (MPO) on or about 12 March, not to have any contact with the victim or her family. (R. at 84-85.) The other consequences limiting his use of his home followed on or about 18 March. (R. at 86.) Meanwhile, Appellant's wife became depressed and went on 14 March to a behavioral hospital off the island to help her with depression and stress. (R. at 71.) On or about 3 April, Appellant learned that his wife was having success in the program at the behavioral hospital, and she would be coming home early, on 7 April. (R. at 72.) On the same day, however, he was told by his command that his wife "would be required to do an ERD", as already noted. (R. at 73.) This was based on a diagnosis she had received in January 2014, three months earlier. (R. at 73.) That diagnosis related to a condition that existed in June 2013 before Appellant's permanent change of station to Air Station Borinquen in July 2013, which had cast doubt upon her receiving "overseas clearance" to come to Puerto Rico, although evidently she did eventually receive clearance. (R. at 68-69, 130-32.) According to the Executive Officer, "the primary purpose of the ERD . . . was to be able to meet the needs of his family. In particular the spouse." (R. at 134.)

The military judge found, "I find that the purpose in directing an early return for dependents . . . was based on the medical condition and the recommendation of the primary care provider . . . . I find this action was in furtherance of a legitimate government purpose of ensuring that dependents receive the medical care necessary for their well-being." (R. at 148.) The military judge acknowledged the key question of whether the official imposing a condition intended to punish (R. at 147-48), and found otherwise. The military judge's finding is supported by the evidence and is not clearly erroneous. We will not disturb it. There was no pretrial punishment in this case.

---

Government's response (Appellate Ex. VIII.). (*E.g.* R. at 69, 87, 118.) Both Appellant's motion and the Government's response refer to their attachments as evidence. We do not cite them in this opinion, but they support the facts set forth.

**Post-trial delay**

Processing of the record of trial (record or ROT) took place according to the following chronology. Details of this chronology are taken from the Staff Judge Advocate Recommendation (SJAR).

| Date | Action | Days elapsed |
|------|--------|:---:|
| 04 SEP 14 | Sentence adjudged | 0 |
| DEC 14 | Trial counsel learned transcriptionist had not received audio CD | |
| 06 JAN 15 | Audio CD sent to transcriptionist | 124 |
| 14 JAN 15 | Trial Counsel received transcript | 132 |
| 20 JAN 15 | ROT sent to Defense Counsel (DC) | 138 |
| 22 JAN 15 | ROT sent to military judge | 140 |
| 10 FEB 15 | ROT authenticated by military judge and received by TC | 159 |
| 13 FEB 15 | Initial clemency request | 162 |
| 25 FEB 15 | Staff Judge Advocate's Recommendation (SJAR) | 174 |
| 11 MAR 15 | Convening Authority action | 188 |

The record was referred to this Court on 26 March 2015.

The single notable period of post-trial processing is the delay in sending the audio recording to the transcriptionist. The SJAR explains that the military court reporter, who was responsible for sending it to the transcriptionist and was the transcriptionist's point of contact, went on terminal leave; evidently correspondence from the transcriptionist concerning non-receipt of the audio recording was therefore not received by anyone.

It is well established that post-trial delay can be the basis for relief. The Court of Appeals for the Armed Forces (CAAF) applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The "*Barker* four-factor analysis" comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135

(citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  Further, in *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), CAAF held that we may grant relief for excessive post-trial delay without a showing of prejudice.  *Id.* at 224.  Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ.  *Id.*

We will first carry out the *Barker* four-factor analysis.  The Convening Authority's action was delayed sixty-eight days beyond the 120-day period prescribed by *Moreno*.  As the SJAR admits, "the main delay was based upon personnel turnover and human error."  We conclude that the first and second *Barker* factors, length and reasons for delay, weigh against the Government.

Appellant asserted the right to timely review before the Convening Authority, albeit not until 13 February 2015 in his clemency request.  The third *Barker* factor weighs against the Government, but not strongly.

As to the fourth *Barker* factor, *Moreno* identified three sub-factors: oppressive incarceration pending appeal, anxiety and concern, and impairment of ability to present a defense at a rehearing.  *Moreno*, 63 M.J. at 139-40.  Both the first and third sub-factors depend upon a successful appeal on other issues, which is not present in Appellant's case.  Concerning anxiety and concern, to be cognizable, it must be "particularized anxiety and concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision."  *Id.* at 140.  Although Appellant asserts some particularized anxiety and concern, in our view, the particulars are not cognizable.  This factor does not weigh against the Government.

Although "no single factor [is] required to find that post-trial delay constitutes a due process violation," *Moreno*, 63 M.J. at 136, in the absence of prejudice the other factors must be very weighty against the Government to warrant a due process violation finding, the delay being "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system."  *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006).  The convening authority's action in *Toohey* took place 644 days after the date of sentence, and the Court of Criminal Appeals issued its decision 2,240 days (more than six years)

after the date of sentence. *Id.* at 357. By contrast, the delay in our case is far from egregious. In the absence of prejudice, we find no due process violation.

We turn now to whether we should grant *Tardif* relief. As previously noted, this Court may consider unreasonable and unexplained post-trial delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ. *Tardif*, 57 M.J. at 224.

More than 120 days passed before the audio file was provided to the transcriptionist; this shows a lack of institutional diligence, to use a term used in several of our previous cases, *e.g. United States v. Greene*, 64 M.J. 625, 628 (C.G.Ct.Crim.App. 2007). We find the delay unreasonable, perhaps warranting some relief.

This case has very limited scope for meaningful relief. Appellant's unsuspended confinement has been completed. Because his forfeitures were deferred and waived until a point after confinement probably ended (considering good time credit), disapproval of some or all confinement would probably not result in a monetary payment to Appellant. We note that if action had been taken within 120 days of the sentence, the waiver of forfeitures most likely would have ended while Appellant was still confined, whereupon automatic forfeitures would have ensued for the remainder of the confinement.

The only remaining avenue for meaningful relief would be disapproval of the dismissal, which Appellant requests. Such an action would be greatly disproportionate to the delay in this case, which was sixty-eight days beyond the *Moreno* standard. We decline to grant such relief.

To recognize the unreasonable delay, we will disapprove three months of confinement, despite the likelihood that it does not provide meaningful relief.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. Only so much of the sentence as provides for confinement for twenty-one months (partially suspended below) and dismissal from the service is affirmed.

Judges JUDGE and HERMAN concur.



For the Court,

Sarah P. Valdes
Clerk of the Court